NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a METRA, Plaintiff-Appellee, v. CHICAGO UNION STATION COMPANY, Defendant-Appellant.

First District (6th Division)   Nos. 1—04—2862, 1—04—2863 cons.

Opinion filed June 17, 2005.

J. Kevin McCall and Christina T. Tomaras, both of Jenner & Block, L.L.P., of Chicago, and Hogan & Hartson, L.L.P., of Washington, D.C. (George W. Mayo, Jr., R. Latane Montague IV, and Candice D. Jones, of counsel), for appellant.

Brian L. Crowe, Jack J. Hagerty, Patricia S. Spratt, and Jared M. Wayne, all of Shefsky & Froelich, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Defendant Chicago Union Station Company, an Illinois corporation, appeals from an order of the circuit court denying its motions to compel arbitration and to dismiss the expedited application for a stay of arbitration brought by plaintiff Northeast Illinois Regional Commuter Railroad Corporation, d/b/a METRA, a public corporation (plaintiff or Metra), and granting the stay of arbitration sought by Metra. On appeal, defendant contends that the court improperly found that it had waived its right to arbitration and that arbitration of a particular liability cost compensation issue was barred by the principle of *res judicata*. For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

This appeal involves questions of waiver of the right to arbitration of certain issues concerning a long-term lease of Chicago Union Station made between plaintiff and defendant. There are two lease agreements between plaintiff and defendant.

The parties entered the first such lease agreement in 1984. On May 1, 1984, defendant, as lessor, entered an agreement (the 1984 agreement or the lease) granting plaintiff, the lessee, the right to the use of the Chicago Union Station for the purpose of handling plaintiff's commuter passenger traffic for a term of five years. On May 1, 1988, the parties amended the agreement (1988 agreement or the amended agreement), extending the lease of the station for another 30 years, through April 30, 2019. Both agreements contain arbitration clauses.

The 1984 agreement contains a standard arbitration clause in section 13, which provides that disputes concerning the construction or interpretation of the agreement be submitted to arbitration. In pertinent part, it states:

"In case of any difference or dispute as to the construction or interpretation of this Agreement upon which the parties are unable to agree, the matter concerning to which there is a controversy shall be submitted to three competent arbitrators, one of whom shall be appointed by the Station Company [defendant] and one of whom shall be appointed by the Lessee [plaintiff]. The two so appointed shall select a third disinterested and competent person and the decision of this Board or of a majority shall be final and conclusive between the parties."

The 1984 agreement contains a second arbitration clause, relating to lease-amending provisions. That arbitration clause, set forth in section 17, set July 1, 1988, as the date by which the parties would enter into negotiations for a new lease agreement; it provides that, if the

parties failed to agree upon terms and conditions of a mutually acceptable new lease agreement by January 1, 1989, the issues in dispute would be submitted to arbitration pursuant to the provisions contained in section 13. The section further provides that all decisions of the arbitration panel would be applied retroactively to April 1, 1989.

The 1988 agreement also contains a lease-amending arbitration clause. Section 3 of the amended agreement provides that the existing agreement is extended for 30 years, to April 30, 2019, and that the lease remains in effect, subject to review every 5 years, unless within a 6-month review period the parties agree to certain amendments or, if they do not agree to the proposed amendments, the differences will be submitted to arbitration. Specifically, section 3 states:

> "[T]he existing Agreement shall be reviewed every five years and amended as necessary upon terms and conditions mutually acceptable to the parties hereto, provided however, if the parties are unable to agree on the amendments to this Agreement within six months after the commencement of such review, the issues in dispute shall be submitted to arbitration pursuant to the provisions of Sections 13 and 17 of the Agreement, which arbitration panel shall determine just and reasonable terms and conditions for Lessee's use of the Station, facilities and Property. The first review date shall be May 1, 1994, unless an earlier review date is requested by either party."

Thus, beginning in May 1994, the terms of the lease were subject to review for the five-year period of 1994-99. The next review, in May 1999, for the 1999-2004 period, is the one at issue here.

This litigation, which commenced in June 2004, arose from a letter sent by defendant the previous month, *i.e.*, May 2004, notifying plaintiff that it sought to initiate arbitration for the 1999-2004 review period. In June 2004, plaintiff filed its action for preliminary and permanent injunction and the application for an expedited stay of arbitration in the circuit court.

At this juncture, we note that the record before this court consists solely of the common law record. Accordingly, the following is taken from the pleadings.

In April 1994, before the start of the first five-year review period (for 1994-99) under the amended agreement, defendant identified three items for negotiation pertaining to lease amendments in anticipation of the six-month negotiation period. After defendant's identification of those items in a letter of April 28, 1994, the parties engaged in negotiations during the review period. Several times, the parties mutually agreed to extend the six-month negotiation period. The parties were still engaged in the review process in July 1995 but,

because they did not reach mutually acceptable terms, the 1994 review period did not result in an amendment to the lease. Neither party initiated an arbitration to amend the agreement. In October 1995, defendant withdrew its request for review by letter.

During the extended course of the negotiations for the 1994 review, defendant repeatedly acknowledged (in letters of October 1994, January 1995, and March 1995) the six-month period of time provided, in section 3 of the agreement, for the negotiation process. In making such acknowledgment, defendant asserted that the only issues that could be reviewed were those raised in its April 1994 letter seeking review of those specific issues. Without the implementation of any amendment to the lease, the parties continued to operate under the existing terms of the 1984 lease agreement.

On April 27, 1999, defendant sent plaintiff a letter advising it that, pursuant to the 1984 agreement and section 3 of the 1988 agreement, "it is the intention of [defendant] to review and amend the terms of the compensation paid by Metra *** [defendant] will initiate the process of review by presenting to Metra in the next few weeks a number of proposed changes in the existing agreements."

According to plaintiff, "neither party served written notice in 1999 of an intent to commence review of any lease issues" for the 1999-2004 period and that "the 1999 six-month review window closed" without the submission of any lease negotiation disputes to arbitration. Because there was no amendment or initiation of arbitration, plaintiff asserts, the parties continued to operate under the existing terms of the lease for the five-year period of 1999-2004.

On May 4, 2004, defendant sent a letter to plaintiff, providing notice that it was invoking the arbitration "provisions" of the 1984 and the amendment agreements to resolve disputed issues for the 1999-2004 review period. Specifically, defendant sought to resolve by arbitration two issues concerning cost sharing, both as to general cost contribution and as to liability costs, which it claimed remained unresolved despite negotiations that continued several years. In its letter, defendant stated:

> "On or about May 1, 1999, the Parties initiated negotiations over certain modifications in terms and conditions set forth in the Station Use Agreement [agreements] that [defendant] sought to have adopted. Among other things, [defendant] sought (1) to obtain a greater cost contribution from METRA, and (2) to have METRA contribute its appropriate share toward liability costs. Although these negotiations extended over several years, the Parties were unable to reach agreement on these two issues. Accordingly, [defendant] is now designating these two issues for resolution by arbitration."

Additionally, in 2000, a dispute arose between the parties concerning the interpretation of terms in section 10 of the 1984 lease, which deals with the sharing of liability-related expenses arising out of incidents occurring at Union Station. Under the standard arbitration clause in section 13 of the lease, disputes such as this, concerning the interpretation of the agreement, are to be submitted to arbitration for a binding decision.

On June 21, 2000, defendant notified plaintiff of its intent to submit to an arbitration panel the question of whether plaintiff was obligated, under section 10 of the 1984 lease, to share expenses in handling claims and lawsuits.

On January 4, 2001, the majority of the arbitration panel found that the cost-sharing provisions in section 10 of the 1984 lease were statutorily rendered void as against public policy (under section 1 of the Landlord and Tenant Act (765 ILCS 705/1 (West 2000)) and *McMinn v. Cavanaugh*, 177 Ill. App. 3d 353, 532 N.E.2d 343 (1988)) and, thus, they were "wholly unenforceable." See *McMinn*, 177 Ill. App. 3d at 357 (indemnity clause in lease has same effect as lease exculpatory clause; both are statutorily prohibited as void and unenforceable).

On July 11, 2002, the arbitration award, which addressed whether payments made under section 10 should be returned to plaintiff, was entered by the circuit court.

Plaintiff claims in its complaint that, because defendant did not seek to vacate or modify the order or award within the 90 days required by statute (see 710 ILCS 5/12(a)(5), (b), 13(a) (West 2004)), the order and award were final. As such, plaintiff claims, the prior arbitration decision and the principles of *res judicata* barred defendant's attempt to open arbitration concerning cost sharing under the invalidated section 10 of the 1984 lease.

In sum, in its June 2004 action, plaintiff claimed: the issues identified in defendant's May 2004 "notice of arbitration" were not arbitrable; defendant was contractually time-barred from arbitrating those issues; defendant abandoned and waived its right to arbitrate the issues identified in the notice by waiting nearly five years after the close of the 1999 review period to attempt to submit the issues to arbitration; and defendant was barred by the doctrine of *res judicata* from opening an arbitration proceeding dealing with cost-sharing issues because an arbitration panel had made a final determination that the cost-sharing provisions of section 10 are null and void as against public policy.

Plaintiff further claimed there was a substantial and *bona fide* dispute concerning the existence of an agreement to arbitrate the issues identified in defendant's notice because the arbitration of such is-

sues was abandoned and waived and barred by the doctrine of *res judicata* and that it was entitled to an order staying any proceedings relative to the notice of arbitration under section 2(b) of the Uniform Arbitration Act (710 ILCS 5/2(b) (West 2004)).

Shortly after plaintiff filed its action, defendant filed a motion to dismiss plaintiff's expedited application for a stay of arbitration. Defendant also filed a motion to compel arbitration pursuant to the Uniform Arbitration Act (710 ILCS 5/2(b) (West 2004)). In its motions, defendant asserted that the dispute between the parties relates to the 1984 agreement and its efforts to obtain from plaintiff a greater contribution toward terminal and liability costs. Defendant further claimed that the disputed matters were clearly subject to the arbitration provisions of the 1984 agreement, which provides that all disputes arising under it shall be arbitrated. It claimed that issues of timeliness, waiver and abandonment, and *res judicata* should be addressed, if at all, by an arbitration panel rather than by the court.

Defendant challenged plaintiff's assertion that there was a deadline under the 1984 lease agreement for instituting the arbitration. Rather, it agreed that there is a six-month period for negotiations, but it claimed that there is no set deadline by which arbitration was to be held. Defendant claimed that the agreement did not limit the negotiations to six months and, in fact, the parties negotiated for more than six months in both the 1994-99 and 1999-2004 periods.

Defendant supported its motion with the affidavit of its general counsel, Jared Roberts. In his affidavit, Roberts stated that, after the April 27, 1999, letter from defendant to plaintiff informing plaintiff that it (defendant) intended to review and amend the terms of the agreement, "the parties engaged in various exchanges of documents and meetings in regard to amending certain terms and conditions" of the 1984 agreement, including those terms dealing with the liability provisions. Roberts referred to a document from a presentation made by defendant in December 2000 and various other documents that were purportedly "illustrative" of negotiations between the parties. The other documents include correspondence between the parties occurring in March and June 2001, and from March to August 2002. According to Roberts, the parties met in November 2002, defendant again forwarded a document to plaintiff in March 2003, and the parties met again in May 2003. Finally, Roberts sent the May 4, 2004, letter to plaintiff, invoking the arbitration provision of the agreement.

Plaintiff supported its reply with the affidavit of its chief executive officer, Philip Pagano. Pagano acknowledged the receipt of defendant's April 27, 1999, letter, but stated that no proposals for changes to the lease were received by plaintiff between May 1, 1999, and November

1, 1999. Pagano further stated that: plaintiff and defendant never agreed to extend the 1999 review period to allow the inception of an arbitration beyond the initial six-month period and that the parties did engage in a comprehensive review and negotiation concerning a number of issues in 2001, but such review was not conducted pursuant to the review provisions in the lease. His letters of March and May 2002, containing references to a potential submission of negotiation differences to arbitration, did not refer to an agreement to extend the 1999 review period.

Defendant subsequently submitted a supplemental affidavit from Roberts, in which Roberts stated that defendant considered the negotiations that continued until mid-2003 to be pursuant to the April 1999 notice letter.

On August 30, 2004, the circuit court entered an order granting plaintiff's application for a stay of arbitration and denying defendant's motions to dismiss the application and to compel arbitration. In its written order, the court gave the following as the reasons for the grant of plaintiff's application to stay arbitration:

"Metra's Application for Stay of Arbitration is granted for the following reasons:

a. [defendant] did not file its notice of arbitration within a reasonable time and therefore waived its right to arbitration for the 1999-2004 period;

b. [r]es judicata bars the relitigation of liability cost sharing issues for the 1999-2004 period under the Lease Agreement; and

c. the Court ruled that the notice of arbitration was not contractually time barred, but granted the application for stay for the reasons set forth in 1.a. and b. above."

Defendant subsequently filed two essentially identical notices of appeal from the court's August 30 order: one, as an appeal of a final judgment, pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301), and the other, as an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).

Defendant later moved this court to consolidate the appeals. In its motion to consolidate, defendant stated its belief that the August 30 order was a final judgment under Rule 301 because it granted a permanent injunction that adjudicated the rights of itself and Metra by barring it from pursuing arbitration against Metra. Defendant further stated that it filed the second appeal under Rule 307 "out of an abundance of caution" to preserve its rights should the August 30 order be deemed interlocutory, but it found no reason to proceed under an expedited schedule pursuant to Rule 307 since all matters had been concluded in the circuit court.

On October 12, 2004, this court granted defendant's motion to consolidate the appeals and to proceed under the schedule governing Rule 301 appeals.

## DISCUSSION

### I

On appeal, defendant first contends that the court improperly ruled that it had waived its right to arbitration for the 1999-2004 review period and that the court further erred by deciding the issue rather than permitting it to be addressed by an arbitration panel.

### Standard of Review

Initially, the parties disagree as to the applicable standard of review. Defendant claims that the court's order should be reviewed *de novo* because, it asserts, the waiver ruling was based on only undisputed facts and it was made without any factual finding, as a matter of law. Plaintiff, on the other hand, claims the order is subject to review for an abuse of discretion. Plaintiff asserts that an order on a motion either to compel or to stay arbitration is injunctive in nature and, thus, subject to deferential review.

Consideration of the applicable standard of review here also implicates the method of review. As noted, defendant had filed an essentially identical appeal pursuant to Supreme Court Rule 307, which governs appeals from interlocutory orders granting or refusing an injunction. 188 Ill. 2d R. 307(a)(1). This court granted defendant's motion to consolidate the appeals and to proceed under a schedule according to Rule 301, which governs appeals from final judgments. 155 Ill. 2d R. 301; see also 155 Ill. 2d Rs. 326, 343 (time for filing record on appeal and time for filing and serving briefs, respectively).

■ This appeal is taken, then, as one from a final rather than interlocutory order. However, because the appeal is from a ruling on the parties' motions to stay and to compel arbitration, the standard of review required here is the standard applied to interlocutory appeals. Rulings on motions to stay or compel arbitration are reviewed like interlocutory appeals, for abuse of discretion. *Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1093, 746 N.E.2d 294 (2001) (hereinafter, *SML*). See also *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11, 761 N.E.2d 724 (2001) (circuit court order to compel or stay arbitration is injunctive in nature).

In *SML*, the court considered arguments, which are similar to those made here, concerning the appropriate choice between *de novo* or a deferential standard of review. There, the court was faced with a relatively complicated procedural background involving a party that

had changed its position regarding arbitration. The plaintiff, which had filed an action for payment on a contract and initially opposed the defendant's motion to compel arbitration as untimely, ultimately, upon reinstatement of its case and the filing of counterclaim by the defendant, sought to compel arbitration and stay the court proceedings. At that juncture, the defendant opposed the motion to compel on the basis that the plaintiff had waived its right to arbitrate the dispute. The court subsequently denied the plaintiff's motion to compel arbitration. *SML*, 319 Ill. App. 3d at 1092.

There, the defendant urged the application of an abuse of discretion standard of review, contending—like plaintiff here—that a motion to compel arbitration is in the nature of a prayer for injunctive relief and the grant or denial of such motion is reviewable as an interlocutory appeal under Rule 307(a)(1). *SML*, 319 Ill. App. 3d at 1092. The plaintiff, however, sought *de novo* review, arguing—like defendant here—that the court below had not conducted an evidentiary hearing or made any factual findings. *SML*, 319 Ill. App. 3d at 1092.

While the *SML* court noted that both positions appeared to have merit, the court ultimately rejected the argument for *de novo* review. *SML*, 319 Ill. App. 3d at 1092-93. There, as here, the court did not have the benefit of a transcript of the proceedings to explain the lower court's decision denying the motion to compel arbitration. *SML*, 319 Ill. App. 3d at 1093. The court reasoned, however, that the basis for the lower court's decision could be easily inferred and concluded that the trial court found that the plaintiff had waived its right to arbitrate. *SML*, 319 Ill. App. 3d at 1093. In reaching its conclusion, the court noted that, contrary to the plaintiff's contention that only legal conclusions were at issue (and, thus, *de novo* review appropriate), to make such determination, the lower court would "necessarily engage in a factual inquiry to determine if a party's actions constitute waiver, something which would have nothing to do with deciding the merits of the case." *SML*, 319 Ill. App. 3d at 1093.

The *SML* court considered the deferential standard applied in an interlocutory appeal, where the scope of review is limited to determining whether the trial court abused its discretion in granting or refusing the requested interlocutory relief. *SML*, 319 Ill. App. 3d at 1093; see also *Jacob v. C&M Video, Inc.*, 248 Ill. App. 3d 654, 664, 618 N.E.2d 1267 (1993). The court noted that, in such instances, the sole question on review is " 'whether there was a sufficient showing to sustain the order of the trial court.' " *SML*, 319 Ill. App. 3d at 1094, quoting *Jacob*, 248 Ill. App. 3d at 664. The court also considered instructive the approach taken by the Seventh Circuit (in *Iowa Grain Co. v. Brown*, 171 F.3d 504 (7th Cir. 1999)), recognizing both factual and legal dimen-

sions to a waiver inquiry and ultimately applying a deferential standard of review. *SML*, 319 Ill. App. 3d at 1094; see *Iowa Grain Co.*, 171 F.3d at 509 (two-tiered approach reflects both factual dimension and legal rules and presumptions; deferential review applies, turning on whether the lower court clearly erred). The *SML* court likewise chose to adhere to a deferential standard and applied an abuse of discretion standard. *SML*, 319 Ill. App. 3d at 1094.

Here, we, too, consider whether a party's pretrial conduct amounts to waiver of arbitration, and, thus, we too adhere to a deferential standard of review. *SML*, 319 Ill. App. 3d at 1094. See also *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1189, 738 N.E.2d 610 (2000) (abuse of discretion standard applies); *Yandell v. Church Mutual Insurance Co.*, 274 Ill. App. 3d 828, 830, 654 N.E.2d 1388 (1995) ("The sole issue before the appellate court on an interlocutory appeal is whether a sufficient showing was made to sustain the order of the trial court denying the motion to compel arbitration"). But see *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority*, 262 Ill. App. 3d 334, 337, 634 N.E.2d 469 (1994) (trial court's finding that grievance at issue was arbitrable was made as matter of law and is reviewable *de novo*).

Moreover, this approach is appropriate where, as here, the lower court rules on a motion to compel arbitration and a motion to dismiss in one combined hearing. See *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1106, 743 N.E.2d 1066 (2001). Where—again, as here—the motion to dismiss and the motion to compel were argued and decided in one hearing, and where no evidentiary hearing was held and facts were not in dispute, the reviewing court considered whether there was a showing sufficient to sustain a determination that compelling arbitration was not warranted. *Federal Signal Corp.*, 318 Ill. App. 3d at 1106. In taking such approach, the court reviewed the denial of a motion to compel as an interlocutory appeal, for an abuse of discretion. *Federal Signal Corp.*, 318 Ill. App. 3d at 1106. We too consider whether the court abused its discretion by denying defendant's motion to compel arbitration and to dismiss plaintiff's action. See *Federal Signal Corp.*, 318 Ill. App. 3d at 1106. Thus, we must determine whether a sufficient showing was made to sustain the order entered by the court. See *Federal Signal Corp.*, 318 Ill. App. 3d at 1106; *Yandell*, 274 Ill. App. 3d at 830.

## Waiver

Here, unlike *SML*, however, there is no need to infer a finding of waiver of the right to arbitrate on defendant's part as the basis for the

court's denial of defendant's motion to compel. The court's written order explicitly sets forth its finding of waiver as one of the bases for its decision. Similar to the situation in *SML*, though, we do not have a transcript of the proceedings and, thus, we do not know the precise reasoning the court employed to reach its decision.

■ Despite the absence of a transcript in the record, we agree with plaintiff that the court necessarily had to make a factual finding before concluding that defendant waived its right to arbitrate. We further agree with plaintiff that defendant inaccurately claims the ruling was based only upon undisputed facts. Rather, as plaintiff points out, there is conflicting testimony of each party's affiant as to whether the parties negotiated lease-amending issues during the 1999 review period; therefore, we agree that the court necessarily had to make a factual finding in determining that defendant had waived its right to arbitrate. See *SML*, 319 Ill. App. 3d at 1093.

Further, defendant complains that the court never explained what factors it considered in making its ruling, but such complaint is without merit coming from the appellant where, as here, a transcript of the lower court proceedings was not included in the record on appeal. As plaintiff correctly maintains, it was defendant's burden as appellant to provide this court with a sufficiently complete record to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 394, 459 N.E.2d 958 (1984). Because defendant failed to provide either a report of the proceedings, a bystander's report or an agreed statement, we do not have an adequate basis upon which we could find error in the court's reasoning for its decision. See *Foutch*, 99 Ill. 2d at 392.

Rather, based on the record before us, we believe the court did not abuse its discretion by determining that defendant waived its right to arbitrate lease-amending issues for the 1999-2004 period. As is well established, even though arbitration is a favored method of dispute resolution, an agreement to arbitrate is a matter of contract. *Salsitz*, 198 Ill. 2d at 13. Parties to such agreement are bound to arbitrate "only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Salsitz*, 198 Ill. 2d at 13. Moreover, a contractual right to arbitrate may be waived like any other contract right. *Feldheim v. Sims*, 326 Ill. App. 3d 302, 309, 760 N.E.2d 123 (2001). Waiver of the right to arbitration may occur when a party conducts itself in a manner inconsistent with the arbitration clause, thereby demonstrating an abandonment of that right. *Feldheim*, 326 Ill. App. 3d at 309.

While defendant agrees that, in principle, contractual rights to arbitration may be waived, it claims that nothing in its course of conduct could be construed as a waiver of such right. It asserts that a

waiver of the right to arbitration may be found where a party has taken an affirmative action inconsistent with the right, which it denies, but not where a party "merely" delayed the institution of arbitration. In making this claim, defendant distinguishes the authority relied on by plaintiff (*i.e., Yandell*, 274 Ill. App. 3d 828, and *Atkins v. Rustic Woods Partners*, 171 Ill. App. 3d 373, 525 N.E.2d 551 (1988)) as involving litigation waiver and it maintains that its conduct was consistent with its right to arbitration in that it engaged in good-faith negotiations with plaintiff in an attempt to avoid arbitration. We do not find defendant's position persuasive.

An examination of the parties' 1988 amended agreement shows the parties' clear intent to subject the lease to periodic review, at five-year intervals. Section 3 of the amended agreement provides that the existing lease terms will remain in effect until April 30, 2019, unless the parties agree to amend those terms. While section 3 does contain the additional provision that disputes concerning amendments shall be submitted to arbitration, it also contains the condition that "the parties are unable to agree on the amendment to this Agreement *within six months after the commencement of such review.*" (Emphasis added.)

Here, the circuit court found that defendant waived its right to arbitration by failing to file its May 2004 notice of arbitration within a reasonable time. Such conclusion would be reasonable where, as we have stated, the parties intended that review of the lease terms was to occur every five years. Under such circumstances, by the time defendant filed its May 2004 notice of arbitration, the entire five-year period (1999-2004) for which the changes in lease terms purportedly were to be arbitrated had already ended. Further, the parties continued to operate throughout that period under the existing lease terms.

The conclusion that defendant waived its right to arbitration is bolstered by examining the parties' previous conduct. As the record reveals, in the course of the first review period (for 1994-99), the parties engaged in negotiations concerning lease amendments during which defendant repeatedly acknowledged in correspondence that the negotiations were subject to the six-month time frame. The negotiations for amendment of the lease terms for the 1994-99 period were extended upon the parties' specific agreement to extend the review period. Therefore, the court could reasonably conclude that, had the parties intended to extend the negotiation period for the 1999-2004 period, they could have specifically agreed to do so.

Further, the court could conclude that defendant's April 1999 letter merely stated defendant's intention to review the terms of the lease, but did not initiate the actual six-month review period. Such

conclusion is supported by the lack of evidence in the record showing that any negotiations occurred until those concerning the liability-sharing provisions, which occurred in December 2000.[1] Therefore, even if we were to consider negotiations as to the liability-sharing provisions included with negotiations concerning lease amendments—which we do not—nothing in the record before us would support a conclusion that defendant acted on its stated intention to initiate any negotiations until December 2000.

Additionally, the fact there was a separate dispute and arbitration procedure tends, we believe, to support the conclusion that defendant waived its right to arbitration as to the lease-amending issues. These negotiations, which we discuss separately below, concerning the interpretation of terms of the liability-sharing provisions in section 10 of the 1984 agreement resulted in the dispute being submitted to arbitration and resolved by the arbitrators. Such negotiations were conducted pursuant to the standard arbitration clause in section 13. However, as we have already discussed, section 3 of the amended agreement specifies both the potentially arbitrable issues—those relating to lease amendments—and the procedure for such arbitration—submission to arbitration after a six-month negotiation period fails to yield agreement. The fact that arbitration of lease-amending issues would not follow the same course as arbitration under the standard clause in section 13, but would be subject to a distinct procedure tends, we think, to further undermine defendant's claim that it engaged in ongoing negotiations for the 1999-2004 period beyond the conclusion of the time period covered for arbitration. See, *e.g.*, *Atkins*, 171 Ill. App. 3d at 378 (discussing scope of arbitrable issues and generic arbitration clauses). Here, given the distinct five-year review periods in the amended lease agreement and the parties' conduct during the previous five-year period, it would be reasonable to conclude that the parties, including defendant, understood that the time frame for amendment of terms pertaining to each five-year period was limited.

We think this is true even though section 3 of the amended agreement does not specify the exact date for the conclusion of the six-month negotiation period in each five-year review. The language of the section nonetheless provides that the negotiations be conducted in a six-month period: "if the parties are unable to agree on the amend-

---

[1]Although defendant's affiant Roberts stated that the parties engaged in various exchanges of documents and meetings relating to amendment of lease terms, he refers specifically to defendant's December 2000 presentation and exchanges occurring in 2001 and 2002.

ment to this Agreement *within six months after the commencement of such review*" (emphasis added), for the issues in dispute to be submitted to arbitration. Defendant concedes that the provision clearly gives the parties "six months following the beginning of a new five-year period to negotiate new terms and conditions." Thus, the court could reasonably conclude that the parties understood the six-month negotiation period to run from the start of each of the five-year review periods in the lease and, accordingly, find that defendant had waived its right to pursue arbitration when the five-year period at issue had already ended.

■ We also reject defendant's contention that the court improperly decided the above waiver issue rather than permitting it to be addressed by an arbitration panel. See, *e.g.*, *SML*, 319 Ill. App. 3d at 1095 (court has discretion to determine whether party's actions constitute waiver of right to compel arbitration); see also *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 447-48, 530 N.E.2d 439 (1988) (arbitrator should decide arbitrability issue where language of arbitration clause is broad and it is unclear whether subject matter of dispute falls within its scope).

## II

■ Defendant next contends that the court improperly ruled that the principles of *res judicata* barred arbitration concerning liability cost-sharing issues and that the court further erred by deciding the issue. Defendant claims that the issue was not ripe for review and would be so only after an arbitration panel addressed the issues related to compensation sharing.

Section 10 of the 1984 agreement contains a liability-sharing provision. It provides that "[w]ith respect to expenses incurred by [defendant] for liabilities arising out of incidents occurring on and after the effective date of this Agreement," defendant would bear "all loss, damage, and expense to persons and property arising from the acts or omissions of the officers, agents, and employees of the [defendant]" and 69.8% of such sums would be charged and billed to the lessee, *i.e.*, to plaintiff.

The dispute arising in 2000 concerned interpretation of the terms of the section 10 liability-sharing provision. Because interpretation of the agreement was at issue, such dispute was subject to binding arbitration under section 13 of the 1984 agreement. The record reflects that defendant notified plaintiff in June 2000 of its intent to submit the dispute to arbitration and that an arbitration panel subsequently rendered an award. After the court entered the arbitration award in July 2002, defendant took no action to vacate or modify it. Therefore,

the order and award were final as to the issue of the liability-sharing provision, which was deemed invalid. Thus, any issues relating to the liability-sharing provisions of the 1984 agreement were barred from relitigation by the principles of *res judicata*.

Where there is a final judgment rendered on the merits by a court of competent jurisdiction, the doctrine of *res judicata* provides that such judgment constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. *Philips Electronics, N.V. v. New Hampshire Insurance Co.*, 312 Ill. App. 3d 1070, 1080, 728 N.E.2d 656 (2000). In addition to a final judgment rendered on the merits by a court of competent jurisdiction, *res judicata* requires an identity of causes of action and an identity of parties or their privies. *Philips Electronics, N.V.*, 312 Ill. App. 3d at 1080. Moreover, the doctrine of *res judicata* applies not only to claims that have been fully litigated in an earlier proceeding, but also those that could have been raised or decided, but were not, thus barring such claims from relitigation at a later date. *Federal Signal Corp.*, 318 Ill. App. 3d at 1116; *Philips Electronics, N.V.*, 312 Ill. App. 3d at 1080. Whether a subsequent claim is barred by the doctrine of *res judicata* is a question of law which is reviewed *de novo*. *Federal Signal Corp.*, 318 Ill. App. 3d at 1116; *Philips Electronics, N.V.*, 312 Ill. App. 3d at 1080.

The doctrine of *res judicata* applies to the right to bring an arbitration action, barring such action if it involves an issue previously reached. *Federal Signal Corp.*, 318 Ill. App. 3d at 1115-16; see also *Monmouth Public Schools, District No. 38 v. Pullen*, 141 Ill. App. 3d 60, 69, 489 N.E.2d 1100 (1985) ("If the arbitration award is binding on the parties, any inquiry into the matters originally controverted is forever closed"). Further, in such case, where the arbitration actions involve issues previously reached, they are barred notwithstanding the parties' contractual rights to bring such actions. *Peregrine Financial Group, Inc. v. Ambuehl*, 309 Ill. App. 3d 101, 107, 722 N.E.2d 723 (1999).

Here, the court properly found, as a matter of law, that claims concerning the liability-sharing dispute under section 10 of the 1984 agreement were barred from relitigation by the doctrine of *res judicata*. Those issues were raised and resolved by the arbitration panel, and judgment on the arbitration award was entered by the court in July 2002. The July 2002 order entering the award was a final judgment. Therefore, regardless of the parties' contractual rights to bring such actions, arbitration on those matters which were originally controverted is barred and inquiry into those issues is "forever closed." See *Federal Signal Corp.*, 318 Ill. App. 3d at 1115-16; *Monmouth Public Schools, District No. 38*, 141 Ill. App. 3d at 69. Contrary to defendant's

argument that the arbitration panel addressed a narrow issue concerning the enforceability of section 10, the doctrine of *res judicata* applies also to claims that could have been raised or decided, but were not. See *Federal Signal Corp.*, 318 Ill. App. 3d at 1116. Thus, claims concerning liability sharing under section 10 were barred from relitigation even if they were not decided. See *Federal Signal Corp.*, 318 Ill. App. 3d at 1116.

Therefore, the court properly ruled that arbitration of the liability cost-sharing issue was barred by the principle of *res judicata*. Contrary to defendant's assertion, this matter was properly decided by the court. We find the court did not abuse its discretion by denying defendant's motion to compel arbitration and to dismiss plaintiff's application for a stay of arbitration. Because we so find, we need not address plaintiff's argument concerning the court's finding that defendant's notice of arbitration was not contractually time-barred.

## CONCLUSION

For all the above-stated reasons, the circuit court properly denied defendant's motions to compel arbitration and to dismiss plaintiff's expedited application for a stay of arbitration and granted plaintiff's application for a stay of arbitration. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

McNULTY and O'MARA FROSSARD, JJ., concur.