# Illinois Official Reports

## Appellate Court

---

### *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565

---

| | |
|---|---|
| Appellate Court Caption | GEORGE VENTURELLA, Individually and Derivatively on Behalf of ABBEY MEDCO, LLC, Plaintiff-Appellant, v. DAVID A. DREYFUSS, M.D., Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-16-0565 |
| Filed | June 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-L-006000; the Hon. Patrick J. Sherlock, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas E. Patterson, Erik J. Chisholm, and Elise H. Yu, of Patterson Law Firm, LLC, of Chicago, for appellant.<br><br>Richard J. Hickey and Kyle Seay, of Hickey, O'Connor & Battle, LLP, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Justices Lavin and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1 Appellant George Venturella, individually, and derivatively on behalf of Abbey Medco, LLC, appeals from the dismissal, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)), of his lawsuit against appellee David A. Dreyfuss, M.D. On appeal, Venturella contends that the circuit court erred in dismissing his derivative claim under the doctrine of *res judicata* and the rule against claim-splitting because another court in a previous case expressly reserved the claim. Specifically, Venturella does not argue that the elements of *res judicata* are not met, but instead claims that his case falls into an exception to *res judicata*: that the circuit court expressly reserved his right to maintain the second action. For the following reasons, we affirm.

¶ 2                           I. BACKGROUND

¶ 3 This action arises from a failed real estate development. Plaintiff Venturella is a real estate developer. Defendant Dreyfuss is a plastic surgeon. Together, they were comanagers and 50% interest holders of Abbey Medco, LLC (Abbey Medco), a limited liability company formed in May 2008 and registered in the State of Illinois specifically for the purpose of developing and constructing a new office complex. The parties intended to build an office complex on land that Venturella owned. Venturella and Dreyfuss both agreed to contribute funds to the project, and Dreyfuss agreed to have his surgical practice sign a lease for space in a building controlled by Venturella. The parties apparently made a series of oral and written agreements regarding the planned transactions for the project.

¶ 4 On January 25, 2008, Abbey Medco entered into a written contract with Abbey Woods Office Park (Woods LLC), an entity solely owned by Venturella. Under the contract, Woods LLC would build office buildings on the land and sell the land and buildings to Abbey Medco. Abbey Medco's down payment was $1.28 million, or $640,000 per partner. Dreyfuss paid $300,000 but not the remaining balance of $340,000.[1]

¶ 5 Eventually, the deal fell apart and litigation ensued. One of the many issues of controversy between the parties was Dreyfuss's failure to make the rest of the $340,000 down payment.

---

[1]Due to the complex procedural history of this cause, we briefly summarize the facts here before going into more detail below: Dreyfuss's failure to make the $340,000 down payment was litigated in the trial court. Dreyfuss's complaint in that related litigation sought a ruling that he was not liable for the $340,000. Venturella and his wholly owned LLC, Woods LLC, counterclaimed to collect the $340,000. On the eve of trial, Venturella sought leave to amend his counterclaim to add count IV, a derivative claim on behalf of another LLC that he and Dreyfuss jointly owned, Abbey Medco. The proposed count IV also alleged that Dreyfuss was obligated to pay the $340,000 down payment. The trial court denied Venturella's motion for leave to amend his counterclaim to add a derivative claim on behalf of Abbey Medco. In response to prodding from Venturella's counsel, the court stated that the denial was not *res judicata* in connection with future lawsuits that might be filed. Following trial, then, the court entered an order finding Dreyfuss liable to Venturella or Abbey Woods for the $340,000. The order also stated that the $340,000 was not owed pursuant to count IV of Venturella's counterclaim, despite the fact that Venturella had not been permitted to amend his counterclaim to include the derivative claim. The court later corrected this error, since this issue was not pending at the time.

¶ 6        In 2009, Dreyfuss, Abbey Medco, and Plastic Surgery Specialists, Inc.,[2] filed a lawsuit in chancery against Venturella and Woods LLC concerning matters related to the development and construction project (the prior suit, or the 2009 case). By that suit, Dreyfuss alleged Venturella had "represented that he was a successful and sophisticated commercial real estate developer" who was looking for a partner to develop an office building in the Abbey Woods development in Frankfort, Illinois. According to Dreyfuss, he and Venturella orally agreed that (1) they would form Abbey Medco, to be owned 50/50 by Dreyfuss and Venturella but managed by Venturella who would advise Dreyfuss of "all business developments"; (2) Venturella would cause Abbey Medco to have all necessary and proper documentation prepared to fully protect the interest of Dreyfuss; (3) Venturella would contribute the real property and the development rights, as well as secure the permits and licenses as part of his capital contribution to Abbey Medco, and would oversee and manage the development as well as the day-to-day business of Abbey Medco; (4) Dreyfuss would move the surgical practice into an adjacent building owned by Venturella, and the surgical practice "would be charged a monthly rental price which was inflated, but that was intended to generate higher income figures for that separate project of Venturella, so that when that project was examined by Venturella's bank, the bank would promptly make all necessary loans in connection with the proposed project for Abbey Medco," and these inflated payments would be considered as part of Dreyfuss' capital contribution; (5) the surgical practice would not build out to its desired specifications, and could cancel its lease at any time without penalty or obligation; (6) Dreyfuss would contribute $300,000 to fund the operations of Abbey Medco to complete the development of the anticipated project, and Venturella would meet with Dreyfuss and discuss the project and Abbey Medco business in detail if the project required more funding (if they agreed, Dreyfuss would contribute up to an additional $300,000 to Abbey Medco); and (7) the project was to be completed by September 2009.

¶ 7        Dreyfuss further alleged that he moved the surgical practice into Venturella's other building at great expense, and he tendered $300,000 to Abbey Medco, but that Venturella never furnished him a receipt for the $300,000 or other necessary documents.

¶ 8        The first count alleged conversion as to Venturella and Abbey Woods, the second count alleged fraud as to Venturella and Abbey Woods, the third count alleged breach of fiduciary duty as to Venturella, the fourth count alleged breach of contract as to Venturella and Abbey Woods, and the fifth count requested injunctive relief against Venturella, terminating his ownership of and participation in Abbey Woods and requiring him to return funds to Dreyfuss.

¶ 9        In August 2009, Abbey Woods filed a three-count counterclaim against Abbey Medco,[3] Plastic Surgery Specialists of Illinois, d/b/a Dreyfuss, and Gelman Plastic Surgery over Dreyfuss's failure to pay the $340,000. By that counterclaim, Abbey Woods alleged (1) "breach of build to suit purchase agreement," where Abbey Medco and Abbey Woods

---

[2]Dreyfuss was a part owner of Plastic Surgery Specialists, Inc.

[3]In this counterclaim, Abbey Medco is defined as "an Illinois limited liability company that was formed and controlled by Dreyfuss to purchase and own the property referenced in the Purchase Agreement." We note here for the record that the official articles of incorporation for the formation of the LLC are in the record on appeal and reflect that Abbey Medco was coformed and is co-owned by both George Venturella and David Dreyfuss.

entered into a build to suit purchase agreement in 2008 by which Abbey Medco was to deposit $1.28 million as earnest money, but breached the agreement when "Dreyfuss tendered only three $100,000 installment payments"; (2) another "breach of build to suit purchase agreement" count, whereby Abbey Woods alleged incurred damages in the amount of $3,313,234 because of the above-mentioned breach; and (3) "breach of lease," by which Abbey Woods alleged it had incurred damages in the amount of $54,076 in unpaid rent, taxes, attorney fees, and court costs due to the breach of the lease agreement.

¶ 10    In the months leading up to trial, Venturella's counsel withdrew. In July 2013, the court set a trial date for October 30, 2013. A new law firm came on to represent Venturella on October 16, 2013.

¶ 11    Two days before the scheduled trial date, on October 28, 2013, Venturella's counsel sought leave to amend the counterclaim. Specifically, Abbey Woods and Venturella sought to withdraw two of the three counts and to include a derivative claim on behalf of Abbey Medco and against Dreyfuss individually for failure to pay the $340,000. It stated that "Counts I and II of the Counterclaim allege damages that were sustained but which may not be recoverable, whereas a new claim for $340,000 against Dreyfuss, while a lower amount, is owed and should be recovered." Further, "Count III, for breach of the lease agreement, contained outdated information relating to the lease between Abbey Woods and Plastic Surgery." Therefore, leave was sought to amend the counterclaim to withdraw counts I and II and update the facts contained in count III, as well as add a derivative claim. The proposed derivative claim itself acknowledged that Abbey Medco was owned by Dreyfuss and Venturella as sole owners and comanaging members, each owning a 50% share of the LLC. It described the alleged agreements of the parties, the alleged subsequent breach of the agreements by Dreyfuss, and the resulting damages. It alleged that "Abbey Medco has suffered as a result of Dreyfuss' refusal to pay his capital contribution" and that, as Abbey Medco was "now winding up," "Venturella is entitled to a distribution of the unpaid $340,000, net of attorneys fees."

¶ 12    On the day of trial, after hearing detailed arguments on the motion by both parties, the court denied the motion to amend the counterclaim. The court ruled:

> "THE COURT: Having reviewed the plaintiff's counterclaim, which carries Venturella's motion for leave to amend the counterclaim and having read the original counterclaim, the motion for leave to amend is denied as well at this time.
>
> What other motions do you have?
>
> MR. PATTERSON [ATTORNEY FOR DEFENDANT] A. Your Honor, could I ask that this—does [Y]our Honor intend that to have *res judicata* effect or is it just denied at this time as a procedural matter so if I want to and it's timely I could commence a new lawsuit on it.
>
> THE COURT: It's denied at this time.
>
> MR. PATTERSON: At this time, but not *res judicata*?
>
> THE COURT: Yes."

The court did not enter a written order to that effect, and the parties do not direct us to a copy of the docket sheet, a specific docket entry, or any other written document regarding the doctrine of *res judicata*. Venturella did not file a motion to reconsider the denial of his motion to amend the counterclaim.

¶ 13     A bench trial commenced, beginning that same day and concluding on December 6, 2013.

¶ 14     On January 10, 2014, the court entered its order in the prior suit. It found against the plaintiffs, Dreyfuss and his entities, on all of their claims. It also denied the majority of the claims in the counterclaim brought by Venturella and his entity. Generally, the order found that plaintiffs and defendants had failed to follow procedures and requirements applicable to their entities and purported contracts, thereby frustrating their causes of action and proofs. The order included a judgment for Dreyfuss on Venturella's claim for the $340,000.[4]

¶ 15     On December 16, 2013, after trial but before any order was issued by the court, Venturella filed the derivative claim in the Law Division on behalf of Abby Medco and against Dreyfuss individually, alleging that Dreyfuss owed $340,000 under the build to suit agreement. The plaintiff was Venturella, individually and derivatively on behalf of Abbey Medco. The case was dismissed for want of prosecution in April 2014. Venturella refiled the derivative action in June 2014 (the 2014 derivative action). The 2014 derivative action involved the same set of operative facts as the counterclaim in the 2009 action.

¶ 16     In August 2014, Dreyfuss filed a motion to dismiss the 2014 derivative action, arguing, in part, that the derivative claim should be dismissed because there was another action pending between the same parties for the same cause, that it should be barred by the doctrine of *res judicata*, and that it should be barred by the rule against claim-splitting, collateral estoppel, the statute of limitations, and the doctrine of laches. After the parties briefed the issues, the court dismissed the 2014 derivative action with prejudice in November 2014. Venturella filed a motion to reconsider, which the court denied in March 2015. Two days later, however, the court ordered the parties to submit supplemental briefing regarding how *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co*., 2014 IL App (2d) 130781, might impact the disposition. After this further briefing, the court vacated its previous November 2014 dismissal as well as the March 2015 order denying Venturella's motion to reconsider. The court allowed Dreyfuss to file a second motion to dismiss the complaint.

¶ 17     Dreyfus did so, filing his second motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)) in December 2015. By that motion, Venturella again argued, in part, that the derivative claim should be barred by the doctrine of *res judicata*, the rule against claim-splitting, collateral estoppel, the statute of limitations, and the doctrine of laches.

¶ 18     After briefing by the parties, the court dismissed the 2014 derivative action with prejudice in January 2016, concluding that both the doctrine of *res judicata* and the rule against claim-splitting barred the derivative claim.

¶ 19     Venturella appeals the dismissal of the 2014 derivative claim.

---

[4]The January 10, 2014, order also erroneously entered judgment for Dreyfuss on Abby Medco's derivative claim for the $340,000, even though leave to amend the counterclaim to include the derivative claim had been denied. A subsequent order on April 21, 2014, corrected the error with the following language: "Regarding the derivative action the January 10, 2014, order is vacated and the Court's ruling on October 31, 2013 shall stand."

¶ 20                                II. ANALYSIS

¶ 21    Before addressing the merits of appellant's claims, we must first note that both appellant's and appellee's briefs on appeal fail to comply with the requirements of Illinois Supreme Court Rule 341 (eff. Jan. 1, 2016). Rule 341(h)(6) requires a statement of facts that contains the facts "necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with the appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Jan. 1, 2016). This court may strike a statement of facts when the improprieties hinder our review. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009).

¶ 22    The purpose of the rules is to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved. *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 292 (1991). A reviewing court may choose to disregard portions of a brief that do not comply with the supreme court rules. *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 527 (1998).

¶ 23    Both appellant and appellee in the case at bar have submitted briefs that include fact sections rife with opinion, analysis, and insufficient citation to the record. The rules of procedure concerning appellate briefs are rules, not mere suggestions, and it is within the appellate court's discretion to strike a brief and dismiss the appeal for failure to comply with those rules. See *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999); *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 478 (2005); *Tannenbaum v. Lincoln National Bank*, 143 Ill. App. 3d 572, 574 (1986) (a brief that lacks substantial conformity to the pertinent supreme court rules may justifiably be stricken). However, we find that the parties' lack of compliance with Rule 341 here does not preclude our review, as the errors are not dispositive to our decision. Accordingly, despite these deficiencies, we continue with our review here, while cautioning the parties to be aware of the appellate rules in the future. See, *e.g.*, *Spangenberg v. Verner*, 321 Ill. App. 3d 429 (2001) (declining to strike brief where it complied with the rules in other ways and none of the violations were so flagrant as to hinder or preclude review).

¶ 24    Turning to the merits, Venturella contends on appeal that the circuit court erred in dismissing the 2014 derivative action under the doctrine of *res judicata* and claim-splitting because the other court in the 2009 case, sitting in chancery, expressly reserved the claim. Specifically, Venturella does not argue that the elements of *res judicata* are not met, but instead claims his case falls into an exception to the rule of *res judicata*: that the circuit court expressly reserved his right to maintain the second action. We disagree.

¶ 25    A motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)) admits the legal sufficiency of the plaintiff's complaint but asserts affirmative defenses or other matter that avoids or defeats the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Dismissal is proper where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). Such affirmative matter has been defined as "a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Neppl v. Murphy*, 316 Ill. App. 3d 581, 585 (2000).

¶ 26    *Res judicata* is an equitable doctrine designed to encourage judicial economy by preventing a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004). The doctrine also "protects [the] parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia*, 209 Ill. 2d at 533.

¶ 27    "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). The essential elements of *res judicata* are (1) a final judgment on the merits, (2) an identity of parties or their privies, and (3) an identity of causes of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008); *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co.*, 358 Ill. App. 3d 985, 1000 (2005). "Moreover, the doctrine of *res judicata* applies not only to claims that have been fully litigated in an earlier proceeding, but also those that could have been raised or decided, but were not, thus barring such claims from relitigation at a later date." *Northeast Illinois Regional Commuter R.R. Corp.*, 358 Ill. App. 3d at 1000; *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996) (*res judicata* "extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit"). In addition, the issue of whether a claim is barred by *res judicata* is an issue of law that mandates *de novo* review by this court. *Northeast Illinois Regional Commuter R.R. Corp.*, 358 Ill. App. 3d at 1000.

¶ 28    "[T]he principle that *res judicata* prohibits a party from seeking relief on the basis of issues that could have been resolved in a previous action serves to prevent parties from splitting their claims into multiple actions." *Hudson*, 228 Ill. 2d at 471-72. "[T]he rule against claim-splitting would not bar a second action if: *** (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action ***." (Internal quotation marks omitted.) *Hudson*, 228 Ill. 2d at 472.

¶ 29    The exceptions to claim-splitting are set forth in section 26(1) of the Restatement (Second) of Judgments (1982), and were adopted in *Rein*. The *Rein* court interpreted that section to provide that "the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action." *Rein*, 172 Ill. 2d at 341; see also *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 392 (2001) ("Although the claims in question may be initially regarded as a single cause of action for application of *res judicata*, subsequent events may alter their status. For example, *res judicata* does not apply to bar an independent claim of part of the same cause of action if the court in the first action expressly reserves the plaintiff's right to maintain the second action ***."). Under this section, the rule against claim-splitting would not bar a second action in certain circumstances:

> "[Section 26(1) of the Restatement (Second) of Judgments] provides that the rule against claim-splitting does not apply to bar an independent claim of any part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory

scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Rein*, 172 Ill. 2d at 341 (citing Restatement (Second) of Judgments § 26(1) (1980)).

¶ 30    "The exception to the rule against claim-splitting necessarily implies that the specific claims that have already reached a final judgment remain final judgments." *Green v. Northwest Community Hospital*, 401 Ill. App. 3d 152, 157 (2010). The express reservation exception applies only to those portions of the prior complaint that had not reached final judgment and the plaintiff voluntarily dismissed. See Restatement (Second) of Judgments § 26, cmt. b (1982) ("the plaintiff should be left with an opportunity to litigate in a second action that *part of the claim which he justifiably omitted* from the first action. A determination by the court that its judgment is 'without prejudice' (or words to that effect) to a second action *on the omitted part of the claim*, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action." (Emphases added.)).

¶ 31    "An express reservation requires that the intent be clearly and unmistakably communicated or directly stated." *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 21 (citing *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 333 (2009)); *Severino v. Freedom Woods, Inc.*, 407 Ill. App. 3d 238, 250-51 (2010) (because of the language on the docket sheet, and in light of the fact that there was no contradiction between the docket sheet and the order granting the plaintiff's voluntary dismissal, the court was compelled to find that the express reservation exception applied to prevent application of the *res judicata* bar to the plaintiff's refiled claim).

¶ 32    Here, the parties do not dispute that the *res judicata* elements are met. In fact, Venturella specifies in his reply brief: "Venturella's opposition to the dismissal of the Derivative Claim has never involved a debate over [the elements of *res judicata*]." Rather, the dispute lies in whether an exception to *res judicata* should apply, that is, whether the chancery court expressly reserved the derivative claim. "[O]nce a party establishes a *prima facie* case of *res judicata*, the burden shifts to the opposing party to properly plead the existence of an exception to *res judicata*." *Deutsche Bank National Trust Co. v. Bodzianowski*, 2016 IL App (3d) 150632, ¶ 19.

¶ 33    As noted above, in order for a circuit court to expressly reserve a claim that otherwise would be *res judicata* such that a party may raise it in a second lawsuit, the reservation must be "clearly and unmistakably communicated or directly stated." *Law Offices of Nye & Associates, Ltd.*, 2012 IL App (2d) 110804, ¶ 21 (citing *Quintas*, 395 Ill. App. 3d at 333); accord *Severino*, 407 Ill. App. 3d at 250-51 (docket sheet included words "VOLUNTARILY DISMISSAL W[ITH] LEAVE TO REFILE—ALLOWED" (internal quotation marks omitted)); accord *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 414 (2002) (considering the Seventh Circuit Court of Appeals' statement that the "reservation of a cause of action must be 'both express, as in writing, and express, as in specifically identified' [citation]" and agreeing that "to avoid the preclusive effect of *res judicata* any reservation of a cause of action must be expressly reserved by the parties").

¶ 34    Here, however, there was no such express reservation. Venturella sought to amend his counterclaim against Dreyfuss on the eve of trial to include a derivative claim for the $340,000 on behalf of Venturella and Abbey Woods. On the day of trial, after hearing

detailed arguments on the motion by both parties, the court denied the motion to amend the counterclaim. The court ruled:

> "THE COURT: Having reviewed the plaintiff's counterclaim, which carries Venturella's motion for leave to amend the counterclaim and having read the original counterclaim, the motion for leave to amend is denied as well at this time.
>
> What other motions do you have?
>
> MR. PATTERSON [ATTORNEY FOR DEFENDANT] A. Your Honor, could I ask that this—does [Y]our Honor intend that to have *res judicata* effect or is it just denied at this time as a procedural matter so if I want to and it's timely I could commence a new lawsuit on it.
>
> THE COURT: It's denied at this time.
>
> MR. PATTERSON: At this time, but not *res judicata*?
>
> THE COURT: Yes."

¶ 35 The court did not enter a written order to that effect, and the parties do not direct us to a copy of the docket sheet, a specific docket entry, or any other written document regarding the doctrine of *res judicata*. In fact, the crux of Venturella's argument is that this one comment from the bench operated to create an exception to the doctrine of *res judicata*, reserving the claim such that Venturella could bring it in a subsequent lawsuit. We find that the facts of this case do not meet the requirements set forth by the courts of this state regarding express reservation of claims. The chancery court did not enter any order permitting Venturella to maintain a second lawsuit for the $340,000 as a derivative action on behalf of Abbey Medco, but merely responded briefly to questioning from Venturella's attorney. There is no docket entry or written order, and, in our opinion, no "intent *** clearly and unmistakably communicated or directly stated." *Law Offices of Nye & Associates, Ltd.*, 2012 IL App (2d) 110804, ¶ 21 (citing *Quintas*, 395 Ill. App. 3d at 333).

¶ 36 We disagree with Venturella's characterization of the circuit court's intent, as well. Rather than the court having clearly and unmistakably reserved this claim, our review of the record leaves us with the impression that any intent on the court's part to reserve the claim was unclear. At the October 2013 hearing, the court first considered Dreyfuss's motion to file a second amended complaint. It heard extensive arguments on the motion, took a recess to review the filings, then denied leave to file the second amended complaint. The court then immediately transitioned to arguments on Venturella/Woods's motion to file an amended counterclaim. The parties argued the motion extensively, the court took a recess to review the filings, and then returned to the bench. It denied the motion to file the amended counterclaim, as quoted directly above. In so doing, the court did not provide grounds for the denial of the motion. Although Venturella characterizes the exchange as a clear demonstration of the court's intent to expressly reserve the claim, we do not think this intent is clear.

¶ 37 We acknowledge Venturella's argument that the circuit court, in its memorandum order ruling on the section 2-619 motion to dismiss, misstated the facts regarding the October 31, 2013, hearing. Specifically, in its order granting Dreyfuss's motion to dismiss, the court referred to case law indicating that the reservation of the right to bring a separate claim should be memorialized in writing in some way, whether in a court order or in a docket sheet entry, in order to avoid preclusion under the principles of *res judicata*. The order then cited an apparently nonexistent order from the prior case, stating:

"The order entered on that date (October 31, 2013) denied Venturella's motion to amend his counterclaim. It did not reference the *res judicata* exchange and said nothing about reserving Venturella's ability to pursue the derivative claim in a subsequent lawsuit."

That portion of the well-reasoned order was in error, as there was no October 31, 2013, written order. While Venturella urges that this error alone requires reversal, we disagree, as this was but a single misstatement in a nine-page memorandum order that is sound in fact and law.

¶ 38　　Venturella also urges us to reverse because dismissal of the derivative claim is fundamentally unfair. We disagree. The doctrine of *res judicata* is an equitable remedy that should not be applied if the result would be fundamentally unfair. *Novak*, 197 Ill. 2d at 390. In this case, however, there is nothing fundamentally unfair about barring this derivative lawsuit on the basis of *res judicata*, as Dreyfuss's underlying liability for the $340,000 down payment was previously decided in his favor in the 2009 case. The issue has been litigated and it is not fundamentally unfair to now bar the derivative action.

¶ 39　　We also reject Venturella's arguments based on judicial estoppel and waiver. Specifically, Venturella urges this court to find that Dreyfuss should be judicially stopped from "both (1) asserting that the Derivative Claim is the same action as the Prior Suit and (2) asserting the doctrine of *res judicata* as a defense after declining to object to the request that the denial have no *res judicata* effect." He relies on the legal principle that the failure to object constitutes a waiver (*Kotvan v. Kirk*, 321 Ill. App. 3d 733, 750 (2001)) and, citing to *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453 (2003), argues that under the doctrine of judicial estoppel, "it is impermissible for a party to receive a benefit for taking a legal position during one proceeding then subsequently advance a contrary theory during a later proceeding." As noted above, however, in order to reserve a claim, the court must "clearly and unmistakably communicat[e] or directly stat[e]" the reservation. *Law Offices of Nye & Associates, Ltd.*, 2012 IL App (2d) 110804, ¶ 21 (citing *Quintas*, 395 Ill. App. 3d at 333); accord *Severino*, 407 Ill. App. 3d at 250-51. That did not happen here. Because it did not happen, there was nothing to which Dreyfuss should have objected. Moreover, had Venturella submitted a proposed written order stating that the court was expressly ruling that Venturella had a right to file a derivative claim in a separate action, Dreyfuss could have objected. Venturella did not submit such an order, however, and there was nothing to which Dreyfuss could have objected.

¶ 40　　Under the strictures of a section 2-619 motion to dismiss, dismissal is allowed when a "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014); see *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. Because Venturella's argument on appeal that the circuit court expressly reserved his right to pursue litigation of the derivative claim in a separate lawsuit fails, we affirm the circuit court's entry of dismissal of Venturella's 2014 derivative action against Dreyfuss based on *res judicata*.

¶ 41　　　　　　　　　　　　　　III. CONCLUSION

¶ 42　　Accordingly, for all of the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

¶ 43        Affirmed.