# Illinois Official Reports

## Appellate Court

---

### *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777

---

| | |
|---|---|
| Appellate Court Caption | ROBERT TEBBENS, Plaintiff-Appellant, v. LEVIN & CONDE, JOEL L. LEVIN, JEAN CONDE, and KATHLEEN N. GRIFFIN, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-17-0777 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | March 21, 2018<br><br>April 10, 2018<br>April 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-L-11339; the Hon. John Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael G. DiDomenico, of Lake Toback DiDomenico, of Chicago, for appellant.<br><br>Rebecca M. Rothmann and Brian C. Padove, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellees Levin & Conde and Joel L. Levin.<br><br>Newton C. Marshall, Edward F. Dunne, and Michelle M. Blum, of Karbal, Cohen, Economou, Silk & Dunne, LLC, of Chicago, for other appellees. |

JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Presiding Justice Cobbs and Justice Howse concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff-appellant Robert Tebbens appeals from the grant of defendants-appellees Levin & Conde, Joel L. Levin, Jean Conde, and Kathleen N. Griffin's motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2014)), dismissing with prejudice Robert's lawsuit alleging legal malpractice against defendants, who served as his legal counsel during the dissolution of his marriage against Julie Tebbens. In that malpractice action, Robert claimed that his former counsel failed to submit to the trial court a marital settlement agreement (MSA) that accurately reflected the parties' intent regarding the division of Robert's pension plan between himself and Julie. On appeal, Robert contends that the trial court erred in finding his claims were barred by the doctrine of *res judicata*. For the following reasons, we affirm.

¶ 2                              I. BACKGROUND

¶ 3    Robert filed his complaint against defendants in October 2014. By this complaint, Robert asserted claims for legal malpractice and breach of contract against all defendants (the malpractice case). Thereafter, the malpractice case was stayed due to Robert's pending appeal in his underlying dissolution of marriage proceeding (the divorce case).

¶ 4    Meanwhile, the underlying divorce case was appealed to this court. *In re Marriage of Tebbens*, 2015 IL App (1st) 140566-U. Our decision in that cause fully lays out the facts, which we recite here in relevant part. Robert and Julie were married in 1995 and filed for dissolution of marriage in 2009. Both parties were represented by counsel during dissolution proceedings.

¶ 5    In brief, the trial court entered a judgment for dissolution of marriage in October 2012, incorporating a MSA into the judgment for dissolution. In part, the MSA divided the parties' retirement accounts and pension plans. Thereafter, the pension administrator requested an order that reflected a specific dollar amount for Julie's distribution, rather than the percentage formula that was set out in the MSA. By this time, Robert was represented by new counsel. Eventually, the trial court modified the MSA over Robert's objection. Robert appealed this modification, and on appeal, this court enforced the MSA language upon which the parties had originally agreed, holding that Robert was entitled to the entry of an order clarifying the dollar value of Julie's share of the pension as Robert had originally requested.

¶ 6    In more detail, specific to the divorce appeal, Robert challenged the trial court's entry of a Qualified Illinois Domestic Relations Order (QILDRO) by the circuit court, which apparently divided the pension percentage-wise in such a way that Julie took more than the parties had agreed upon. In April 2015, we reversed in part, vacated in part, and remanded with directions. In that cause, we recited the following facts, which are pertinent to the present appeal:

"In December 2009, Robert initiated the instant dissolution proceedings. The trial court entered a judgment for dissolution of marriage on October 31, 2012. Both parties were represented by counsel during dissolution proceedings. A marital settlement agreement (MSA) was incorporated into the judgment for dissolution. Amongst other things, the MSA divided the parties' retirement accounts and pension plans:

\* \* \*

Regarding Robert's pension from the Chicago Fire Department, the MSA provides:

'7.5 ROBERT's interest in the Fireman's Annuity Fund shall be allocated between the parties as follows:

a. To JULIE, a sum equal to fifty percent (50%) of the marital value of ROBERT's vested accrued benefit under the Fireman's Annuity Fund.

b. To ROBERT, the remaining balance of his vested accrued benefit under the Fireman's Annuity Fund including all sums not otherwise allocated to the Wife, and all contributions on or after November 1, 2012.

The foregoing allocations to JULIE shall be implemented pursuant to the terms of a Qualified Illinois Domestic Relations Order (QILDRO).'

Other retirement accounts were also divided:

\*\*\*

In November 2012, Robert filed a 'motion to amend, or in the alternative, to vacate judgment for dissolution of marriage.' Through this motion, Robert argued, in pertinent part, that paragraph 7.5 should be amended, as it did not conform to the parties' true agreement. Specifically, Robert alleged the paragraph as submitted during negotiations read:

'[Draft] 7.5 ROBERT's interest in the Fireman's Annuity Fund shall be allocated between the parties as follows:

a. To JULIE, a sum equal to fifty percent (50%) of the marital value of ROBERT's vested accrued benefit under the Fireman's Annuity Fund, valued as of _____, 2012.

b. To ROBERT, the remaining balance of his vested accrued benefit under the Fireman's Annuity Fund including all sums not otherwise allocated to the Wife, and all contributions and accruals to his vested accrued benefit on or after _____, ____.'

The court entered a ruling on the motion on December 21, 2012, stating, in relevant part:

'Over Robert's objection, Paragraph 7.5a of the Marital Settlement Agreement shall be modified to:

"2. To JULIE, a sum equal to fifty percent (50%) of the marital value (8-26-95 to 10-31-12) of ROBERT's vested accrued benefit under the Fireman's Annuity Fund, and all accruals to her portion after November 1, 2012." '

3. By Agreement, Paragraph 7.5b of the Marital Settlement Agreement shall be modified to:

"To ROBERT, the remaining balance of his vested accrued benefit under the Fireman's Annuity Fund including all sums not otherwise allocated to the wife, and all contributions and accruals to his portion after November 1, 2012." '

On January 18, 2013, Robert filed a motion to clarify both the October 31, 2012 judgment, and the December 21, 2012 order, asking the court to clarify these 'to conform same to the parties' agreement.' In support, Robert recounted that while Paragraph 7.5 of the MSA awarded Julie 50% of the marital portion of his vested, accrued benefit under the Fireman's Annuity Fund, and awarded Robert all remaining benefits and interest, that paragraph stated a percentage amount rather than a dollar amount for Julie. According to Robert, this percentage amount was insufficient for the Firemen's Annuity Fund and Benefit Fund of Chicago to divide the asset as agreed upon by the parties. In support, Robert relied on a letter dated November 30, 2012, from the Fireman's Annuity Fund. That letter states:

'In response to your recent request, we quote the following figures:

Based on our accountants review of your pension records we estimate that as of November 1, 2012 you would be entitled to a monthly annuity in the amount of $1,201.21 payable at age 50 with monthly annuity payments continuing for your lifetime.

This calculation is made pursuant to ILCS 5/6-126, and is based on your years of pensionable service credit at 17.93 years from your date of hire on December 1, 1994 through November 1, 2012 and total contributions made to the Fund during that period.'

Because Robert and Julie were married August 26, 1995, argued Robert, his pre-marital service credits from December 1, 1994, through September 25, 1995, are his non-marital property. Thus, Robert submitted, it was the intent of the MSA that Julie should receive 50% of a monthly annuity of an amount less than the $1,201 amount, but rather should receive 50% $1,201 minus the credit for his premarital service. However, because of the 'mechanics' of a QILDRO and because a percentage order (rather than a dollar amount order) was entered, Julie 'will not only receive the monies stated above, but also [ ] any increases in the pension earned by Robert through his post-divorce, non-marital efforts, including without limitation, promotions, salary raises, and the like.'

The record on appeal also contains a document entitled 'Firemen's Annuity and Benefit Fund of Chicago QILDRO Benefit Estimate Statement' dated November 1, 2012, reflecting Robert's 'Monthly Retirement Benefit as of last available payroll' as $1,201.

In her response, Julie admitted that service credits earned by Robert prior to the marriage would be considered Robert's non-marital asset. Julie generally denied all other allegations or alleged she had insufficient information to provide an answer. She also stated:

'JULIE further states that pursuant to the terms of the Judgment, the division of ROBERT's pension will be effectuated by entry of a QILDRO. JULIE stipulates that any QILDRO entered in this matter with respect to ROBERT's pension shall be in conformity with the stated requirements of the Fireman's Annuity Fund.'

Julie then filed her 'memorandum in support of response to motion to clarify' in which she argued that Robert's motion to clarify was actually seeking a modification of the judgment and was therefore barred by *res judicata*. In the alternative, Julie also asked the court to apply the *Hunt* formula, as set forth in *In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979), to the pension division.

Robert then filed his 'motion to strike, or in the alternative, response to memorandum in support of response to motion to clarify.' The motion contained two counts: Count I, a motion to strike; and Count II, a motion to clarify. By Count I, Robert asked that Julie's memorandum be stricken, alleging she filed it late and without leave of court. Additionally, Robert argued that Julie could not now seek to have the pension divided under the *Hunt* formula. By Count II, Robert argued that *res judicata* did not bar his clarification motion because he was 'not seek[ing] to amend, modify, vacate or otherwise change the substance of the Judgment or December 21, 2012 order, but rather to clarify the orders for the purpose of the preparation and entry of a [QILDRO].' Additionally, he argued that 'through no fault of the parties, the Fireman's Annuity Fund is unable to give effect to the intention of the parties with the current [percentage] language of the Judgment, and therefore the Judgment must be clarified to include a dollar amount.' He specified:

'Robert is not trying to amend or vacate the Judgment, but to clarify the December 21, 2012 order. Robert does not dispute that Julie is entitled to 50% of his pension plan as of October 31, 2012, and does not seek to change this fact. However, in order for Julie to receive 50% of his pension plan as of October 31, 2012, that number must be reduced to a dollar amount. There exists no other way to accomplish the mandate of the orders. Robert further does not dispute that Julie is entitled to accruals to her portion of the plan, i.e. cost of living increases. However, she is not entitled to accruals to Robert's portion of the plan, as those accruals are and will be due to Robert's post-marital efforts. This is not an attempt at a second bit [*sic*] of the apple, but an attempt to effectuate the language contained in the December 21, 2012 order, and accordingly that order must be clarified to list a specific dollar amount, which has already been calculated by Firemen's Annuity Fund.'

In addition, Robert argued that the application of the *Hunt* formula for the first time in postjudgment motions was inappropriate, as, in a motion to clarify, the application of a new division formula would not possibly effectuate the intent of the parties.

The court heard arguments from the parties, and took the matter under advisement.

In July 2013, the trial court entered a memorandum opinion in which it denied the motion to clarify, finding that it 'function[ed] effectively as a motion to reconsider' and was, therefore, barred by the doctrine of *res judicata*. Specifically, regarding the motion to clarify versus the motion to reconsider, the court found:

'Because the language of the agreement was modified in a prior Order, this Court finds the proposed clarification to be previously decided on the merits in the December 21, 2012 Order. Additionally, ROBERT's motion changes the distribution of the pension in question [by adding a specific dollar amount], altering the substantive nature of the Judgment. Because a motion to clarify cannot enlarge

the judgment, ROBERT's Motion to Clarify functions effectively as a motion to reconsider.'

The court also determined that the Firemen's Annuity letter on which Robert relied was not new evidence and 'does not purport to necessitate a dollar amount, but rather details the current value of the pension fund benefits as they stand.' The court determined that the *Hunt* formula already applied to the pension division where 'the plain language of ¶ 7.5 of [the MSA] uses *Hunt* as written.'

Thereafter, Julie filed a motion for entry of a QILDRO in which she asked the court to enter a QILDRO consistent with the July order, that is, consistent with the *Hunt* formula for division of the pension.

Robert also filed a motion for entry of a QILDRO in which he urged '[t]he plain language of the MSA and the December 21, 2012 order provides that only Robert's vested accrued benefit as of November 1, 2012 is to be divided, and that Robert is to receive all contributions after November 1, 2012.' Specifically, it stated, '[a]s Robert's future employment is not "fully and unconditionally guaranteed," any increase in his pension as a result of his continued employment and/or continued monetary contributions to the pension were not part of the "vested accrued benefit" as of November 1, 2012. Therefore, the plain language of the December 21, 2012 order (and the MSA) provide that Julie is not entitled to any portion of the pension that was not a vested accrued benefit as of the date of entry of Judgment. *** Further, while Julie is awarded "all accruals to her portion" after November 1, 2012, the term "accrual" implies increases in value intrinsic to the asset, i.e. interest or dividend reinvestments, or in this case costs of living allowances.' Robert proffered a draft dollar-amount QILDRO, which he submitted was consistent with the Firemen's Annuity and Benefit Fund's calculation of Robert's vested benefits as of October 31, 2012. Robert also submitted an alternative draft percentage-division QILDRO in which Julie is awarded one-half the marital portion of Robert's vested accrued benefit as of October 31, 2012, while still providing Julie with accruals to her portion after November 1, 2012.

After briefing and short arguments from the parties on January 17, 2014, the court 'declin[ed] to conduct an evidentiary hearing as to the parties' intent,' entered Julie's proposed QILDRO instanter; denied Robert's motion for entry of QILDRO; and ordered that the 'QILDRO calculation order to be entered in accordance with FABF policies and Robert's motion to enter QILDRO calculation order is denied, without prejudice, based upon time not being right.' " *In re Marriage of Tebbens*, 2015 IL App (1st) 140566-U, ¶¶ 4-21.

¶ 7        Robert and Julie each initialed every page of the MSA containing the paragraph 7.5 language prior to tendering the proposed MSA to the court for entry.

¶ 8        On November 27, 2012, around the time Robert filed the motion to amend, defendants sought leave to withdraw as counsel for Robert, alleging a "breakdown in the attorney-client relationship." The court granted the motion to withdraw on December 21, 2012. The same day, the circuit court entered the order described above regarding the motion to amend, stating in relevant part:

"THIS CAUSE coming on to be heard this 21st day of December, 2012, before this Honorable Court for hearing on Robert's Motion to Amend, or in the Alternative, to Vacate Judgment for Dissolution of Marriage, counsel for Robert's Motion to

Withdraw, and Julie's Petition for Rule to Show Cause, and the court being fully advised in the premises:

IT IS HEREBY ORDERED:

\*\*\*

2. Over Robert's objection, Paragraph 7.5a of the Marital Settlement Agreement shall be modified to:

'2. To JULIE, a sum equal to fifty percent (50%) of the marital value (8-26-95 to 10-31-12) of ROBERT's vested accrued benefit under the Fireman's Annuity Fund, and all accrued benefit under the Fireman's Annuity Fund, and all accruals to her portion after November 1, 2012.'

3. By Agreement, Paragraph 7.5b of the Marital Settlement Agreement shall be modified to:

'To ROBERT, the remaining balance of his vested accrued benefit under the Fireman's Annuity Fund including all sums not otherwise allocated to the wife, and all contributions and accruals to his portion after November 1, 2012.' "

¶ 9    Robert obtained new counsel, who filed an appearance with the court on January 18, 2013. This counsel filed the motion to clarify after the Firemen's Annuity Fund administer requested a specific dollar amount for each party's share of the pension rather than the percentage formula set forth in the MSA. The circuit court, however, did not grant Robert the clarification he requested through his subsequent counsel but instead modified the MSA in a manner unfavorable to Robert, entering a July 17, 2013, order that improperly applied, contrary to the parties' agreement regarding the division of the pension, the reserved-jurisdiction method, also known as the *Hunt* formula, for the first time. See *In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979).

¶ 10    On appeal, we noted that "[t]here is no dispute here that the parties agreed to the division of Robert's pension benefits in the MSA. Therefore, the terms of the MSA are binding on the parties and on the court." *In re Marriage of Tebbens*, 2015 IL App (1st) 140566-U, ¶ 25. We also found that Robert's motion to clarify should not have been recharacterized as a motion to reconsider, noting:

"through that motion, Robert was merely requesting clarification of a vague term in the judgment of dissolution, that is, the specific dollar amount of the 50% division. We think this motion was not an attack on the correctness of the judgment, but rather was a request for a clarification of the trial court's findings." *In re Marriage of Tebbens*, 2015 IL App (1st) 140566-U, ¶ 26.

We further found that the circuit court's application of the *Hunt* formula was in error. We said:

"We are cognizant here that 'the terms of the marital settlement agreement are binding on the parties and the court.' See *Blum*, 235 Ill. 2d at 32; see also 750 ILCS 5/502(b) (West 2012) ('The terms of the agreement \*\*\* are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable'). Additionally, the terms of a marital settlement agreement are interpreted in the same manner as a contract, that is, the court must ascertain the parties' intentions from the language of the contract. *Blum*, 235 Ill.

2d at 32. Here, it is evident from the plain language of the MSA that the parties' intent was for Julie to receive one-half of the marital portion of Robert's vested accrued benefit as of October 31, 2012, and Robert to retain the other one-half of the marital portion of the vested accrued benefit as of October 31, 2012, plus all contributions after October 31, 2012. The marital portion of the vested accrued benefit, as detailed in the December 21, 2012, order, is from August 26, 1995, through October 31, 2012.

While the *Hunt* formula on which the trial court relied in its July 2013 memorandum opinion is a recognized method of dividing a pension upon dissolution of marriage, it is but one method of doing so. The parties herein, however, bargained for and chose another approach, that is, one in which Julie was awarded 'all accruals to her portion' of Robert's pension after November 1, 2012, including increases in the value intrinsic to her portion such as interest, dividend reinvestments, or costs of living allowances, but not any portion of the pension that was not a vested accrued benefit as of the date of the entry of judgment. When the court applied the *Hunt* formula, it changed the calculations in such a way that the division no longer reflects the parties' bargained-for intent." *In re Marriage of Tebbens*, 2015 IL App (1st) 140566-U, ¶¶ 35-36.

¶ 11 We remanded with instructions that the circuit court grant Robert the clarification he requested (entry of an order with a dollar amount for Julie's share of the pension) so that the Fireman's Annuity Fund could put the intended original terms of the MSA into effect. *In re Marriage of Tebbens*, 2015 IL App (1st) 140566-U, ¶ 37.

¶ 12 On November 30, 2012, while all of the above was transpiring, defendant Conde filed a petition for setting final fees and costs. By that petition, Conde alleged Robert had made payments totaling $6000, but still owed $42,345 in legal fees as of November 29, 2012. Robert objected to the fee petition, arguing in part that defendants should not be awarded the full amount of their fees because the motion to amend that they filed was unsuccessful, Robert had to hire new counsel due to defendants' failure to obtain a satisfactory outcome, and new counsel had to incur the expense of a separate motion for clarification. After a hearing on the petition, the court granted the fee petition, entering the following written order:

"This matter coming before this court for hearing on the Petition for Setting Final fees and Costs, Jean Conde and counsel for Robert appearing and the court conducting a hearing and being fully advised in the premises:

The Court hereby finds that the fees charged were fair and reasonable and necessary.

That Robert Tebbens acknowledged receipt of the Clients Rights and Responsibilities and executed a written engagement letter. Robert Tebbens received concurrent monthly billing statements and made no objections to the fees charged.

It is hereby ordered: 1. Judgment is entered in favor of Jean Conde against Robert Tebbens in the amount of $42,345.25 (forty two thousand three hundred forty five and 25/100)."

Robert did not appeal this August 2, 2013, ruling.

¶ 13 Following the resolution of the divorce case, the trial court removed the malpractice case from the stay calendar. Robert maintains this malpractice suit against defendants, seeking as damages the attorney fees he incurred during a portion of the divorce proceedings, attorney

fees incurred in the prior appeal, and attorney fees incurred in this malpractice action.[1] By his complaint, Robert alleged, in relevant part:

"6. Tebbens retained Levin & Conde in March of 2012, pursuant to a written agreement ***, to represent him in a Dissolution of Marriage action he previously had filed concerning his marriage to Julie Tebbens (hereafter 'Julie').

\* \* \*

11. The gravamen of this Complaint is the failure of the Defendants to protect Robert's interest in his pension benefits in accordance with the agreement Robert had with his counsel.

12. The proposed MSA contained a Paragraph 7.5 which addressed the allocation of Robert's pension benefits between Robert and Julie. Specifically, the proposed MSA provided that Julie was to receive fifty percent (50%) of the accrued value of Robert's City of Chicago Fireman's Annuity and Benefit Fund as of the day of the Dissolution decree subject to a modest reduction based upon Robert's employment by the City of Chicago for several months prior to his marriage to Julie. ***

13. However, the version of the MSA tendered to the Court by Defendants on October 31, 2012, as an agreed MSA erroneously omitted the agreed upon valuation date. ***

14. Thus, rather than Julie receiving the intended and agreed to Fifty Percent of the accrued value of Robert's pension benefits as of the day of the Dissolution decree, the MSA presented to the Court as agreed resulted in an Order which provided that Julie's interest in Robert's pension benefit would be '50% of the martial value of Robert's vested accrued benefit under the Fireman's Annuity Fund (sic)'. The difference in value between these two versions was calculated at approximately $368,820. ***

15. In an attempt to correct this error, the Defendants filed, on November 30, 2012, a 'Motion to Amend or Vacate' the October 31, 2012, judgment order in an effort to restore the agreed upon language from the draft used during hallway negotiations (using defendant counsel's terms). ***

16. In support of this motion, Defendants stated at Paragraph 14 that 'The language of Paragraph 7.5 of the entered Marital Settlement Agreement entered on October 31, 2012 *does not reflect the agreement of the parties.*'

17. Further, at Paragraph 16 of their Motion to Vacate, Defendants stated: 'Paragraph 7.5 of the Marital Settlement Agreement that was entered on October 31, 2012 is erroneous and should be amended to reflect the parties' agreement…' ***

18. The omitted portion of the parties' agreement required a specific valuation date, the absence of which created the possibility that Julie's portion of Robert's pension benefit would be over $368,000 more than had been agreed to. ***

[19]. That Defendants did not proof read [*sic*] the MSA they erroneously submitted to the trial court is made abundantly clear by the fact that the Motion to Vacate [ ] identified a second remarkable error.[2]

---

[1]Robert was given leave to file a series of amended complaints. The final complaint of which we are concerned here is his third amended complaint. For the reader's ease, we refer to this third amended complaint simply as "the complaint."

22. The result of the Motion to Amend was an order entered December 21, 2012, which provided, in pertinent part, that Julie was to receive (a) '…fifty percent (50%) of the marital value of ROBERT'S vested accrued benefit under the Fireman's Annuity Fund and all accruals to her portion after November 1, 2012.' ***

23. Defendants in their Motion to Amend made a judicial admission to the trial Court that the erroneous term contained in the MSA which allocated a larger share of Robert's pension benefits to Julie was made possible because Tebbens' attorneys did not review the complete final version of the MSA tendered to the Court by Julie's counsel.

* * *

27. Simply put, had the tendered MSA truly been one which was agreed to by the parties, there would have been no occasion to file a Motion to Amend and no necessity for an appeal.

28. In trying to place responsibility of their error on the trial court judge who was misinformed by the Defendants about the actual terms of the MSA, they are causing Tebbens additional financial harm." (Emphasis added.)

The complaint includes, as an exhibit, the client engagement agreement between Robert and defendants.

¶ 14 The defendants filed a motion to dismiss the malpractice action,[3] which was fully briefed. Specifically, defendants argued in part that the cause should be dismissed pursuant to section 2-615 because (1) the trial court's error in rewriting the MSA rather than simply clarifying the parties' intent was an intervening cause of any injury sustained by plaintiff; (2) the malpractice claim cannot stand where the plaintiff ultimately prevails on appeal, *e.g.*, Robert's position remained viable through his success on appeal, and thus he cannot now claim that defendants proximately caused any harm; and (3) Robert failed to allege that defendants breached the standard of care. Defendants also argued that the cause should be dismissed pursuant to section 2-619 because (1) the claims are barred by the principles of *res judicata*, where the same core facts alleged in Robert's complaint had previously been addressed and rejected by the court in resolving the fee petition and (2) Robert fails to allege a breach of contract claim. The trial court dismissed the malpractice action in its entirety based on the doctrine of *res judicata* in October 2016, noting: "Defendants' Motion to Dismiss Plaintiffs third amended complaint is granted for reasons stated in open court (due to the elements of *res judicata* having been met)."

¶ 15 Robert filed a motion to reconsider, which the trial court denied in February 2017, specifically noting that: "Plaintiff's Motion to Reconsider is denied for the reasons stated in open court, based on the requirements of *res judicata* being met."

¶ 16 Robert appeals.

---

[2]The error referenced in paragraph 18 was a scrivener's error regarding the valuation of the marital residence. This error was remedied by the trial court.

[3]Defendants Conde and Griffin filed the initial motion to dismiss, and defendants Levin and Levin & Conde joined.

¶ 17                                    II. ANALYSIS

¶ 18     On appeal, Robert contends the trial court erred in dismissing his malpractice lawsuit. Specifically, Robert argues that the cause should not, in fact, be barred by the doctrine of *res judicata*. Robert claims no damages related to the division of his pension but seeks only to recover the fees incurred on appeal, a refund of the fees billed by defendants from the date the MSA was signed, and the attorney fees incurred in the malpractice case.

¶ 19     As noted above, defendants' motion to dismiss alleged that dismissal was appropriate pursuant to both section 2-615 and 2-619 of the Code. This motion included the argument that the cause should be dismissed pursuant to section 2-619 based on the doctrine of *res judicata* where the same core facts alleged in Robert's complaint had previously been addressed and rejected by the court when resolving the fee petition.[4] Following a hearing, the trial court dismissed the malpractice action in its entirety based on the doctrine of *res judicata*, noting: "Defendants' Motion to Dismiss Plaintiffs third amended complaint is granted for reasons stated in open court (due to the elements of *res judicata* having been met)." Robert filed a motion to reconsider, which the trial court denied in February 2017, specifically noting that "Plaintiff's Motion to Reconsider is denied for the reasons stated in open court, based on the requirements of *res judicata* being met." This, then, was a dismissal pursuant to section 2-619(a)(4), which allows for involuntary dismissal when "the cause of action is barred by a prior judgment." 735 ILCS 5/2-619(a)(4) (West 2014). We therefore address the circuit court's dismissal order pursuant to the principles governing section 2-619 of the Code.

---

[4]To the extent Robert argues that the court considered a separate theory for dismissal pursuant to the doctrine of *res judicata*, that is, that Robert's claims were barred by paragraph 12.3 of the MSA, which required Robert to pay his own "past and future attorneys' fees" to any other attorney or expert retained in the divorce case, and that one cannot know upon which *res judicata* theory the court dismissed this cause, we disagree. In our estimation, defendants' motion to dismiss presents one theory for dismissal based on *res judicata* grounds—the "core facts" theory—and the sub-issue regarding paragraph 12.3 is argued as to a section 2-619 dismissal, but not pursuant to the theory of *res judicata*. In any event, we cannot know what was considered or discussed at the dismissal hearing as there is no transcript of the dismissal hearing, any hearing on the motion to reconsider, or any other hearing, and nor is there an agreed statement of facts or a bystander's report included in the record on appeal.

Our supreme court has repeatedly held that the burden is on the appellant to present a sufficiently complete record of the trial proceedings to support a claim of error on appeal. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch*, 99 Ill. 2d at 391. An appellant has the burden of presenting this court with a record that is sufficient to support his claims of error. *Foutch*, 99 Ill. 2d at 391-92. Any doubts or deficiencies arising from an incomplete record will be construed against the appellant. *Foutch*, 99 Ill. 2d at 392. When presented with an insufficient record, we will indulge every reasonable presumption in favor of the judgment appealed from. *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006). Accordingly, in the absence of a complete record supporting the plaintiff's claim of error, we will resolve "[a]ny doubts which may arise from the incompleteness of the record *** against the appellant." *Foutch*, 99 Ill. 2d at 392. We consider here the dismissal of Robert's complaint pursuant to the principles of *res judicata* as it pertains to whether the malpractice claim is precluded by the previous fee petition, not to any issue regarding paragraph 12.3.

- 11 -

¶ 20    A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts an affirmative matter that acts to defeat the claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31; *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005); *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002); see 735 ILCS 5/2-619(a)(9) (West 2014) (allowing dismissal when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim"). The question on review is whether a genuine issue of material fact precludes dismissal or whether dismissal is proper as a matter of law. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 613 (2007). Section 2-619(a)(3) allows for dismissal of the action if "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2014).

¶ 21    When ruling on a motion to dismiss, a reviewing court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party and accept as true all well-pleaded facts in the complaint and all inferences that may reasonably be drawn in the plaintiff's favor. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Disputed issues of fact are reserved for trial proceedings. *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). "Under section 2-619, the defendant admits to all well-pled facts in the complaint, as well as any reasonable inferences that may be drawn from those facts [citation], but asks the court to conclude that there is no set of facts which would entitle the plaintiff to recover. [Citation.] As long as there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law, the complaint may be properly dismissed." *Advocate Health & Hospitals Corp.*, 348 Ill. App. 3d at 759. The circuit court's decision to grant such a motion will be reviewed *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 22    As noted, defendants filed a motion to dismiss based on both sections 2-619 and 2-615. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Defendants address a number of issues based on the motion to dismiss pursuant to both sections 2-615 and 2-619, and fail to acknowledge that the dismissal here was specifically pursuant to section 2-619. We acknowledge that the trial court's order granting the motion to dismiss in its entirety did not specify whether the dismissal was as to section 2-615 or section 2-619. It did, however, specify that the dismissal was for the "reasons stated in open court" and "due to the elements of *res judicata*" having been met. Because we are not privy to a transcript from the hearing, a bystander's report, or even an agreed statement of facts, we cannot know what reasons were stated in open court. We do, however, know that the only argument regarding *res judicata* made in the motion to dismiss was made pursuant to section 2-619 of the Code. In addition, we find the *res judicata* argument persuasive. Therefore, we address here only the dismissal as to section 2-619 of the Code.

¶ 23    *Res judicata* is an equitable doctrine designed to encourage judicial economy by preventing a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004). The doctrine also "protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia*, 209 Ill. 2d at 533.

¶ 24    "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001).

- 12 -

The essential elements of *res judicata* are (1) a final judgment on the merits, (2) an identity of parties or their privies, and (3) an identity of causes of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008); *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co.*, 358 Ill. App. 3d 985, 1000 (2005). "Moreover, the doctrine of *res judicata* applies not only to claims that have been fully litigated in an earlier proceeding, but also those that could have been raised or decided, but were not, thus barring such claims from relitigation at a later date." *Northeast Illinois Regional Commuter R.R. Corp.*, 358 Ill. App. 3d at 1000; *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996) (*res judicata* "extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit"). In addition, the issue of whether a claim is barred by *res judicata* is an issue of law that mandates *de novo* review by this court. *Northeast Illinois Regional Commuter R.R. Corp.*, 358 Ill. App. 3d at 1000.

¶ 25    Initially, we must address the issue of forfeiture. As defendants point out, Robert failed to contest in the trial court that the three elements of *res judicata* were met, either in his response to the motion to dismiss or in his motion to reconsider. Rather, he only argued that an exception to *res judicata* applied. He has therefore forfeited any challenge to the base elements of *res judicata* having been met. See *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413 (2002) (an appellant may not raise a new argument for the first time on appeal; arguments not raised in the trial court are considered forfeited).

¶ 26    Forfeiture aside, we find that the elements of *res judicata* are met here. First, it is undisputed that Robert was a party to both actions. Conde and Robert were both parties to the fee petition. Griffin was in privity with Conde, as Griffin was Conde's associate and the fee petition pertained to Griffin's work. In the same manner, Levin & Conde and Joel Levin were in privity with Conde because Levin & Conde is the law firm with which Conde was affiliated, and Joel Levin was a partner of the firm. See, *e.g.*, 750 ILCS 5/508(c) (West 2014) (an attorney who files a fee petition becomes a party to the proceeding); *Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 722-23 (2004) (an attorney is in privity with an employer law firm). We find a sufficient identity of the parties for purposes of the doctrine of *res judicata*.

¶ 27    Second, we also find the requirement of a final judgment on the merits by a court of competent jurisdiction is met.

> "A final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. [Citation.] To be final, a judgment must dispose of or terminate the litigation or some definite part of it." *In re Adoption of Ginnell*, 316 Ill. App. 3d 789, 793 (2000).

Robert challenges this element for the first time in his reply brief on appeal.[5] In so doing, he presents this court with a case filed after the filing of his opening brief, *In re Marriage of Teymour*, 2017 IL App (1st) 161091, which he argues is dispositive of this issue in his favor. Specifically, relying on *Teymour*, he argues that there is no final judgment in the case at bar because the trial court did not provide Rule 304(a) language when ruling on the fee petition. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). We disagree.

---

[5] We allowed defendants to file a surresponse regarding this issue and granted Robert an opportunity to file a surreply to defendants' surresponse.

- 13 -

¶ 28    In *Teymour*, this court held, in part, that where other claims were pending and there was no Rule 304(a) finding, an order finding a party in contempt was not appealable. Initially, even if we were to find that *Teymour* affected the finality of the fee judgment in the case at bar, *Teymour* cannot be applied retroactively to reopen a final fee judgment, which was entered in August 2013. More to the point, however, even if *Teymour* had existed at the time of the fee judgment, it would still not have had effect on the finality of the fee judgment. *Teymour*, decided on September 6, 2017, provided that, if there are multiple postdissolution matters pending, a judgment on one of those orders is not final and appealable in the absence of a Rule 304(a) finding. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); *Teymour*, 2017 IL App (1st) 161091, ¶¶ 35-41.

¶ 29    Under the case law existing in the First District at the time the fee judgment was entered, the fee judgment was a final judgment on the merits and was immediately appealable under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994)[6] without the need for a Rule 304(a) finding because the fee judgment was unrelated to any other matters still pending in the divorce. Section 508(c) acknowledges the legislature's express intent that attorney fee petitions be decided independently from other issues in a dissolution of marriage case. 750 ILCS 5/508(c)(2) (West 2014) ("Irrespective of a Petition for Setting Final Fees and Costs being heard in conjunction with an original proceeding under this Act, the relief requested under a Petition for Setting Final Fees and Costs constitutes a distinct cause of action. A pending but undetermined Petition for Setting Final Fees and Costs shall not affect appealability of any judgment or other adjudication in the original proceeding."). Acknowledging a split in the various districts of this court, *Teymour* aligned the First District with the Second and Third Districts of this court and stated:

> "Where a party files one postdissolution petition, several more are likely to follow. Allowing or requiring parties to appeal after each postdissolution claim is resolved would put great strain on the appellate court's docket and impose an unnecessary burden on those who would prefer not to appeal until the trial court resolves all pending claims. To be sure, justice may on occasion require that a final order disposing of a claim be immediately appealed, rather than held at bay until another pending postdissolution claim is resolved. Yet, Rule 304(a) accommodates those circumstances: the trial court need only enter a Rule 304(a) finding." *In re Marriage of Teymour*, 2017 IL App (1st) 161091, ¶ 39 (citing *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 344-45 (2001)).

¶ 30    Robert does not argue on appeal that the fee judgment is not final now. Instead, Robert seems to argue that, at the time the fee judgment was entered, that is, in August 2013, the trial court had yet to resolve his motion to clarify the MSA and the competing motions for entry of QILDROs. We addressed these issues in the prior appeal, issued in April 2015, where we found Robert was entitled to clarification of the MSA language regarding division of the pension, vacated the April 20, 2014, amended QILDRO, and remanded for entry of an appropriate QILDRO.

---

[6]Rule 301 provides: "Every final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional. An appeal is a continuation of the proceeding." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 31 Although Robert alleges that the finality element of *res judicata* was not met at the time the fee judgment was entered, he fails to include documentation regarding these pending motions. Instead, he directs this court to the fee petition order decided on August 2, 2013 (and quoted above), and to this court's previous Rule 23 order (Ill. S. Ct. R. 23 (eff. July 1, 2011)) in this matter, which do not illuminate what was pending and when. As noted above, the burden is on the appellant to present a sufficiently complete record of the trial proceedings to support a claim of error on appeal. *Corral*, 217 Ill. 2d at 156; *Webster*, 195 Ill. 2d at 432; *Foutch*, 99 Ill. 2d at 391-92. Any doubts or deficiencies arising from an incomplete record will be construed against the appellant. *Foutch*, 99 Ill. 2d at 392. When presented with an insufficient record, we will indulge every reasonable presumption in favor of the judgment appealed from. *Smolinski*, 363 Ill. App. 3d at 757-58. From what we can ascertain based on the record presented on appeal, all postdissolution claims in Robert's divorce had been resolved long before the trial court dismissed Robert's malpractice case on October 21, 2016, and it appears the August 2013 fee judgment—which he failed to timely challenge—was final at that time. *Teymour* is inapposite to the instant case, and we find no error in the trial court's determination that the "final judgment on the merits" element for *res judicata* was met.

¶ 32 Third, we find sufficient identity of cause of action for purposes of preclusion by the doctrine of *res judicata*. As noted above, the doctrine of *res judicata* bars "not only *** what was actually decided in the original action, but also *** matters which could have been decided in that suit." *Rein*, 172 Ill. 2d at 334-35. Accordingly, a litigant cannot bring a malpractice claim that is based on the same core facts that were previously addressed in a fee petition. See *Bennett v. Gordon*, 282 Ill. App. 3d 378, 383-84 (1996).

¶ 33 Illinois law applies the "transactional test" to determine if there is an identity of cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310-11 (1998). Under the "transactional analysis" adopted by our supreme court in *River Park*, separate claims are considered the same cause of action and are barred by the doctrine of *res judicata* where they arise from a single group of operative facts, regardless of whether they assert different theories of relief. *River Park*, 184 Ill. 2d at 311. Claims may be considered part of the same cause of action "even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *River Park*, 184 Ill. 2d at 311. The *River Park* court explained that, in the transactional analysis, the claim is viewed in " 'factual terms' " and considered " 'coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights.' " *River Park*, 184 Ill. 2d at 309 (quoting Restatement (Second) of Judgments § 24 cmt. a, at 197 (1982)). Additionally, a "final judgment will bar a plaintiff's claim to all or any part of a transaction or series of connected transactions from which the action arose." *Doe v. Gleicher*, 393 Ill. App. 3d 31, 37-38 (2009) (citing *River Park*, 184 Ill. 2d at 311).

¶ 34 In *Bennett v. Gordon*, 282 Ill. App. 3d 378, 383-84 (1996), this court agreed with the trial court's finding that the plaintiff's malpractice claims arising out of a divorce judgment were barred by *res judicata*, as the allegations involved the same subject matter that had been addressed in the former counsel's fee petition in the divorce. The plaintiff had already challenged the attorney fee petition on the basis that the attorneys had committed various errors, and thus the plaintiff did not have a right to relitigate those issues. *Bennett*, 282 Ill. App. 3d at 380-85. The *Bennett* court explained:

- 15 -

" 'The proper test to determine identity of causes of action for *res judicata* purposes is whether actions are based upon a common core of operative facts.' *Horton v. Caterpillar, Inc.*, 260 Ill. App. 3d 150, 153 *** (1994). A plaintiff may plead more than one theory of recovery arising from a single group of facts. However, these multiple theories of relief constitute but a single cause of action for purposes of *res judicata*. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484 *** (1993). 'If the same facts are essential to maintain both proceedings or the same evidence is necessary to sustain the two, there is identity between the causes of action asserted, and *res judicata* bars the latter one.' *Torcasso*, 157 Ill. 2d at 491 ***." *Bennett*, 282 Ill. App. 3d at 382-83.

¶ 35 Similar to the case at bar, the litigant in *Bennett* contested the fee petition by criticizing the services the attorney had provided. *Bennett*, 282 Ill. App. 3d at 383-84. The *Bennett* court found that the fee petition and malpractice claim were based on "the same core of facts," and thus there was an identity of cause of action, regardless of the fact that the allegations in the malpractice claim were more fully developed. *Bennett*, 282 Ill. App. 3d at 383-84. Specifically, in finding the element of identity of cause of action existed, the *Bennett* court said:

"We find that there is a nexus between plaintiff's defense to the fee petition and her malpractice action. It is apparent from a review of the record that plaintiff raised substantially the same issues in her defense to the fee petition as she raised in her first amended complaint. For example, in plaintiff's defense to the fee petition, plaintiff alleged that defendants conducted inadequate discovery in failing to obtain appraisals and accountings of all of Bennett's assets. In her malpractice action, plaintiff alleges that defendants failed to contact critical witnesses necessary to ascertain the value of Bennett's holdings. Similarly, in her defense to the fee petition, plaintiff alleged that defendants failed to execute the paperwork necessary to transfer stocks, property and a pension to her. In her amended complaint, plaintiff alleged that defendants failed to execute the documents necessary to effectuate an immediate transfer of marital property and the policeman's fund pension to plaintiff upon entry of judgment.

While plaintiff's malpractice claims are more fully developed, both sets of allegations arise from the same core of facts. Unlike *Torcasso*, the resolution of plaintiff's cause of action involves an examination of the same facts and issues raised in defense to the fee petition. Recovery under these facts constitutes but a single cause of action." *Bennett*, 282 Ill. App. 3d at 383-84.

¶ 36 We think *Bennett* is remarkably similar to the case at bar, where there is a nexus between Robert's defense to the fee petition and his malpractice action. For example, the trial court previously rejected Robert's argument that defendants should not be awarded the full amount of their fees because the motion to amend they filed was unsuccessful. Now, the court dismissed Robert's malpractice claim by which he argued his attorneys were negligent in filing the motion to amend. Like *Bennett*, there is a common core of facts between Robert's defense to the fee petition (*e.g.*, counsel failed in regards to the motion to clarify) and his malpractice action (*e.g.*, counsel was negligent in regards to the motion to clarify). When ruling on a petition for attorney fees under section 508(c) of the Illinois Marriage and Dissolution of Marriage Act, a court must analyze the attorney's performance, the attorney's skill, and the benefits obtained by the client, among other factors. See 750 ILCS 5/508(c) (West 2014); *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 103 ("In determining whether the fees charged are reasonable, the trial court considers not only the number of hours the attorney spent on the

case but the following factors as well: (1) skill and standing of the attorneys; (2) the difficulty of the issues; (3) the amount and importance of the subject matter in the field of family law; (4) the degree of responsibility involved in the management of the case; (5) the usual and customary charge in the community; and (6) the benefits to the client."). In our opinion, the malpractice claim and the fee petition in the case at bar are even more closely related to one another than the *Bennett* claim and petition where Robert only claims his attorney fees as damages, and the *Bennett* litigant claimed her attorneys failed to accurately assess the husband's assets and failed to conduct adequate discovery. Robert cannot now bring this malpractice suit to relitigate issues that were already resolved against him and that he chose not to fully develop in the first proceeding. We find a sufficient identity of the parties for purposes of the doctrine of *res judicata*.

¶ 37    We acknowledge there is some disagreement regarding whether a judgment on a fee petition has *res judicata* effect with respect to a subsequent malpractice claim based on the same legal services. See, *e.g.*, *Bennett*, 282 Ill. App. 3d 378 (finding that a judgment on a fee petition has *res judicata* effect on a subsequent malpractice claim based on the same services); *Purmal*, 354 Ill. App. 3d at 722 (same); *Corcoran-Hakala v. Dowd*, 362 Ill. App. 3d 523 (2005) (same). But see *Wilson v. M.G. Gulo & Associates, Inc.*, 294 Ill. App. 3d 897 (1998) (finding no *res judicata* effect); *Weisman v. Schiller, Ducanto & Fleck*, 314 Ill. App. 3d 577 (2000) (same).

¶ 38    Defendant urges us to find *Wilson* dispositive of this issue. In *Wilson*, which was decided before our supreme court adopted the transactional test for addressing questions of *res judicata*, a divided panel of this court concluded that *res judicata* did not bar a divorce litigant's malpractice suit against her former attorney. *Wilson*, 294 Ill. App. 3d at 902. In that malpractice suit, the plaintiff had alleged her attorney negligently failed to investigate both her and her husband's marital assets. The attorney responded that the suit was barred by *res judicata* because the trial court had rejected the plaintiff's contest to the number of hours billed when it ruled on the fee petition. The appellate court rejected the attorney's argument with the majority reasoning that the fee petition decision had not dealt with the reasonableness of the attorney's representation and that, because the plaintiff had not contested the reasonableness of the attorney's representation in the earlier proceeding, that issue could not have been fully litigated in the earlier proceeding. *Wilson*, 294 Ill. App. 3d at 901-02.

¶ 39    Justice Holdridge dissented, arguing that "the doctrine of *res judicata* extends not only to those claims that are fully litigated in the first proceeding, but also to those issues that could have been decided or litigated" and, because the claim of professional malpractice could have been raised as a defense to the fee petition, the later malpractice suit should be barred. *Wilson*, 294 Ill. App. 3d at 902-03 (Holdridge, J., dissenting).

¶ 40    We find *Wilson* distinguishable from the case at bar and not of help to Robert. In *Wilson*, unlike the case at hand, the plaintiff could not have fully litigated her malpractice claim during the fee proceedings as it was only "ambiguously referenced" in the first proceedings (*Wilson*, 294 Ill. App. 3d at 901 (majority opinion)), and the trial court "expressly excluded any evidence relating to the [defendant attorneys'] competency" (*Wilson*, 294 Ill. App. 3d at 901). Here, on the other hand, Robert's malpractice claims are based on concepts the trial court rejected when Robert contested defendants' fee petition. Robert objected to the petition and denied that the defendants' services were all reasonable and necessary. Robert argued that the defendants had to seek clarification of the divorce judgment and that he had to retain new

counsel to further seek clarification of the judgment due to the defendants' lack of success with the motion to amend. The court rejected Robert's arguments in this regard, found that all of the defendants' fees were fair, reasonable, and necessary, and entered judgment against Robert for the full $42,345.25 in unpaid fees. This is the precise core of facts that form the basis of the malpractice suit. Although we do not have a transcript of any hearing on the fee petition, a bystander's report, or an agreed statement of facts, unlike in *Wilson*, it does not appear that the court barred or excluded evidence relating to attorney competency. Unlike *Wilson*, here Robert was not precluded from litigating those issues in the first case. We find no error in the trial court's determination that the three elements of *res judicata* are met.

¶ 41    Robert next argues that, even if the three elements of *res judicata* are met, we should nonetheless reverse and remand for a full trial where exceptions to the doctrine of *res judicata* apply. Where defendants have established a *prima facie* case for application of *res judicata*, it is Robert's burden to establish the applicability of any exception. *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 32 (" '[O]nce a party establishes a *prima facie* case of *res judicata*, the burden shifts to the opposing party to properly plead the existence of an exception to *res judicata*.' " (quoting *Deutsche Bank National Trust Co. v. Bodzianowski*, 2016 IL App (3d) 150632, ¶ 19)).

¶ 42    There are six exceptions to the doctrine of *res judicata* recognized in Illinois:

> " '(1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on this claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.' " *Hudson*, 228 Ill. 2d at 472-73 (quoting *Rein*, 172 Ill. 2d at 341).

¶ 43    Robert argues that three exceptions apply: first, that applying *res judicata* here is inconsistent with the implementation of the statutory scheme concerning when legal malpractice claims can be filed; second, that this case involves a continuing wrong; and third, that fundamental fairness compels this court to reverse the dismissal. We disagree with these arguments.

¶ 44    As to his first argument, that applying *res judicata* here is inconsistent with the implementation of a statutory scheme, Robert specifically argues that pursuant statute, there are no compulsory counterclaims in Illinois and, because there are no compulsory counterclaims, dismissing his petition on *res judicata* grounds "necessarily compels a holding that not only are there compulsory counterclaims in this context but also that this compulsion to sue acts to 'cut short' the time the legislature has otherwise said a plaintiff has to file a legal malpractice claim." The Second District of this court addressed a similar issue in *Dowd*. In *Dowd*, an attorney filed a fee petition to recover a referral fee from a client. The trial court granted the fee petition and ordered the client to pay the lawyer a certain fee. The client then filed a complaint against the lawyer alleging, in part, that the referral was obtained through fraud and that if she and the attorney had an attorney-client relationship, the attorney committed malpractice by failing to properly advise her before she signed a contingency agreement. The trial court dismissed the complaint on *res judicata* grounds, and the plaintiff

appealed, arguing that, because counterclaims are not mandatory in Illinois, she should not be precluded from filing her lawsuit to raise those claims. *Dowd*, 362 Ill. App. 3d at 530. On review, the appellate court affirmed the trial court, stating that "plaintiff's current claims involve the same operative facts as the earlier litigation" and that "successful prosecution of plaintiff's current suit would in effect nullify the prior judgment." *Dowd*, 362 Ill. App. 3d at 531. There, "plaintiff could have—and should have—raised those claims in that proceeding." *Dowd*, 362 Ill. App. at 531.

¶ 45        We acknowledge that, as Robert points out, in Illinois counterclaims are permissive rather than mandatory. *Dowd*, 362 Ill. App. 3d at 530. Therefore, a party may generally raise a claim against a plaintiff either by a counterclaim or in a separate action. *Dowd*, 362 Ill. App. 3d at 530-31. However, Illinois law further dictates that "if the defendant's claim involves the same operative facts as the plaintiff's claim, *res judicata* may bar the defendant from raising his or her claim in a subsequent action." *Dowd*, 362 Ill. App. 3d at 531. Additionally, our supreme court has held that *res judicata* bars the pursuit of a counterclaim if the successful prosecution of that counterclaim would have the effect of nullifying a prior final judgment. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 41 (finding a number of a defendant's counterclaims could no longer be pursued due to *res judicata* when the plaintiff's action addressing the same subject matter had gone to final judgment).

¶ 46        As noted above, the doctrine of *res judicata* extends to what was actually decided in the first action as well as to matters that *could have been decided* in the first action. *River Park*, 184 Ill. 2d at 302. Robert's malpractice claim is based on the same group of operative facts as his prior fee petition. Robert could have pursued these claims at that time but failed to do so. In addition, Robert cannot now pursue his malpractice claim because, were he successful, his malpractice claim would effectively nullify the prior judgment on the fee petition, as the damages he seeks now are not related to the division of his pension but are only attorney fees, including those attorney fees determined by the court on the fee petition. The trial court properly found that *res judicata* bars this claim.

¶ 47        Regarding the second proposition, that this case involves a continuing wrong, Robert maintains that we should find an exception for the application of the doctrine of *res judicata* here, where the he is the victim of a continuing wrong that started with the attorney negligence alleged in the malpractice claim but continued via the appellate review, the remand, the dismissal, and now this appeal. Initially, we note that plaintiff has waived this argument by failing to raise it in the trial court. *Robinson*, 201 Ill. 2d at 413 (an appellant may not raise an issue for the first time on appeal; issues not raised below are considered waived). Waiver aside, the exception for continuing conduct does not apply here, where the alleged wrong is neither continuing nor recurring. Rather, Robert contends the defendants committed legal malpractice during their representation of him in his dissolution case. The specific conduct at issue occurred when the MSA was executed and submitted to the circuit court in October 2012. The fee judgment was not entered until August 2013. Additionally, the defendants were given leave to withdraw as counsel prior to the fee petition being heard. Robert argued in opposition to the fee petition that defendants had to file a motion seeking to clarify language in the judgment and that Robert subsequently had to hire new counsel to address the same issue due to defendants' lack of success. Robert's malpractice claim is based on those same criticisms of defendants' work. There is no recurrent or continuing wrong here, and the trial court properly found that *res judicata* bars this claim.

¶ 48    Finally, as to the third proposition, that fundamental fairness compels this court to reverse the dismissal, Robert urges us to find that "[i]f there is a set of facts that fits [the fundamental fairness exception], it is this case" and that *res judicata* should not apply for fairness reasons because he would not have been able to obtain a full remedy in the fee petition proceeding. We disagree. We understand that Robert is on the hook for a large sum of attorney fees. Nonetheless, Robert was not restricted to merely contesting the fees he owed but could have filed a counterclaim in response to the fee petition. Again, the malpractice claim and the earlier fee petition pertain to the same operative core of facts, and the malpractice claim was properly barred by the doctrine of *res judicata*.

¶ 49    In summary, Robert's malpractice suit is an improper attack on the trial court's ruling that found the attorney fees were fair, reasonable, and necessary. The trial court has already ruled, over Robert's objection, that all of defendant's fees for their legal services were "fair reasonable and necessary." Robert failed to appeal that ruling and cannot now appeal it by default.

¶ 50                                    III. CONCLUSION

¶ 51    Accordingly, for all of the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

¶ 52    Affirmed.