2020 IL App (1st) 171905-U

No. 1-17-1905

Order filed June 30, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JUDITH KROL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 L 5572 |
| | ) | |
| VILLAGE OF WILMETTE, | ) | Honorable |
| | ) | John H. Erlich, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE ELLIS delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the trial court's grant of summary judgment in favor of defendant where there was no question of material fact on the issues of causation or constructive notice.

¶ 2     Plaintiff Judith Krol filed a complaint against defendant, the Village of Wilmette, alleging defendant's failure to maintain a public sidewalk in a reasonably safe condition caused her significant personal injuries. The Village moved for summary judgment, which the trial court

granted. On appeal, plaintiff argues the court erred when it granted defendant's motion for summary judgment. We affirm.

¶ 3    On June 6, 2015, plaintiff and her friend, Martha Igarashi, took a train and a bus from Chicago to a rummage sale in Winnetka. At approximately 2 p.m., plaintiff and Igarashi left the rummage sale and took a bus to Wilmette, where plaintiff maintained a post-office box, so plaintiff could pick up her mail. After a tour of the public library in Wilmette, plaintiff and Igarashi walked east on the north side of Wilmette Avenue. Plaintiff was carrying one of Igarashi's shopping bags in her right hand and pulled a grocery trolley with her left hand. Plaintiff saw the bus she and Igarashi needed to take back to Chicago, which plaintiff was anxious to catch because it ran only every half hour. Plaintiff hastened her pace and turned to Igarashi to tell her to "hurry up." As plaintiff turned back around, she tripped and fell on the brick sidewalk, landing on her face, which caused her to bleed profusely.

¶ 4    Plaintiff filed a complaint seeking damages for personal injuries she suffered as a result of defendant's negligence in maintaining the sidewalk. In her complaint, plaintiff alleged that on June 6, 2015, she was walking on a public sidewalk at or near 601 Green Bay Road in Wilmette when, despite her exercise of ordinary care for her own safety, "she was caused to fall as a result of a broken, defective[,] and dangerous sidewalk." Plaintiff alleged that defendant knew or should have known the sidewalk was broken and defective, and had the duty to maintain the sidewalk in a safe condition. Plaintiff alleged that defendant violated its duty by permitting the sidewalk to become broken and unsafe and, as a result of the broken sidewalk, she "was caused to trip and fall and sustain injuries to her arms, legs, back, face[,] and torso," for which she was required to expend large sums of money in an effort to be cured.

¶ 5 The Village moved for summary judgment. In its motion, the Village claimed it was entitled to judgment in its favor because (1) the condition at issue was a nonactionable *de minimis* condition for which no duty could be imposed; (2) defendant was entitled to immunity under section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3-102(a) (West 2014)), because the record failed to establish defendant's actual or constructive knowledge of the defect in the sidewalk; and (3) plaintiff failed to establish causation, as the alleged cause of her fall was predicated on speculation or conjecture.

¶ 6 The Village attached to its motion the transcript of plaintiff's discovery deposition (the only deposition taken in the case) together with its exhibits, which included photographs of bloodstains at the scene taken by a responding officer on the day of plaintiff's fall and the photograph of the scene taken by plaintiff nine months later. The Village attached the sworn statements of (1) plaintiff's companion on the day in question, Martha Igarashi, who averred she did not observe any defect in the brick sidewalk and had no knowledge of what caused plaintiff to fall, and (2) the responding police officer who authenticated the photographs he took and averred he did not see a trip hazard in the area where plaintiff reportedly fell.

¶ 7 The Village also attached the sworn statement of its director of engineering and public works, who averred that there was no ongoing construction to the sidewalk where plaintiff fell at the time of her fall, there were no reported trip-and-fall accidents at that location, she had viewed the photograph provided by plaintiff and saw no appreciable defect which would require repairs, and defendant had not repaired or replaced any of the brick pavers depicted in the photograph provided by plaintiff.

¶ 8    Plaintiff filed a response to defendant's motion, in which she argued whether the defect fell within the *de minimis* rule is a question of fact to be resolved by the trier of fact. Further, plaintiff argued "[w]hat may be *de minimis* to a healthy young person may be [*sic*] *de minimis* to an elderly person such as the [p]laintiff who has sustained other slip and fall injuries." On the issue of notice, plaintiff argued whether defendant had actual or constructive knowledge was a question of fact. She conceded defendant did not have actual notice of the defect but argued that "it appear[ed] from the pictures that this condition existed for quite some time and that the [d]efendant knew or upon reasonable exercise of care should have known about the defect," and argued the determination of whether defendant had notice of the defect should be resolved by the trier of fact. Plaintiff offered no argument in response to defendant's causation argument.

¶ 9    At the hearing on defendant's motion, the trial court found the photographs of bloodstains on the sidewalk that were appended to the transcript of plaintiff's deposition contradicted her testimony as to where she fell. Citing *Scott v. Harris*, 550 U.S. 372 (2007), the court found the objective evidence, *i.e.*, the photographs of the bloodstains, established plaintiff did not fall where she indicated she fell. Further, it found the photographs clearly showed there were no defects in the sidewalk where plaintiff fell. Thus, it accepted defendant's arguments and granted defendant's motion, dismissing the case with prejudice.

¶ 10    On appeal, plaintiff argues the trial court erred in granting the motion for summary judgment. Specifically, plaintiff contends the court usurped the function of the jury when it determined where plaintiff fell based on the photographs appended to her deposition transcript. She also contends, without argument, the issues of whether a defect is *de minimis* and whether

defendant had notice of the defect were questions of fact which precluded summary judgment. She offers no argument on the issue of causation.

¶ 11     We first note plaintiff's brief does not meet the requirements of Illinois Supreme Court Rule 341. The statement of facts in plaintiff's brief is scant and does not set forth the facts necessary to the understanding of the case, nor does it contain any references to the pages of the record on which those facts may be found. See Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018) (the statement of facts shall contain the facts necessary to an understanding of the case with appropriate reference to the pages of the record). Additionally, plaintiff's statement of facts does not describe the alleged defect or set forth any of the pertinent evidentiary material submitted to the court in regard to defendant's motion for summary judgment.

¶ 12     Likewise, plaintiff's argument does not contain any reference to the record and contains only brief, undeveloped arguments. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument must contain the appellant's contentions and the reasons therefor, with citation of the authorities and the pages of the record relied on). And plaintiff's statement of the applicable standard of review, which states "the standard of review is that the Court made plain error in granting the motion for summary judgment," appears after her argument, contains no citation to authority, and is incorrect despite well-settled law. See Ill. S. Ct. R. 341(h)(3) (eff. May 25, 2018) ("The appellant must include a concise statement of the applicable standard of review for each issue, with citation to authority, either in the discussion of the issue in the argument or under a separate heading placed before the discussion in the argument."); *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15 (standard of review for grants of summary judgment is *de novo*).

¶ 13    "The rules of procedure concerning appellate briefs are rules, not mere suggestions, and it is within the appellate court's discretion to strike a brief and dismiss the appeal for failure to comply with those rules." *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 23. The purpose of these rules is to require parties to present clear and orderly arguments, supported by citations of authority and the record, so that an appellate court can properly ascertain and dispose of the issues involved. *Id.* ¶ 22. "It is well established that this court is not required to search the record to determine what legal issues are involved in an appeal." *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Further, this court is not a depository into which an appellant may dump the burden of research and argument. *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. "Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of [Rule 341(h)(7)]." *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010).

¶ 14    The deficiencies in plaintiff's brief hinder our review and, ordinarily, we would be inclined to strike plaintiff's brief and dismiss her appeal. See *Venturella*, 2017 IL App (1st) 160565, ¶ 23. However, the record is simple, and we have the benefit of defendant's brief, which cogently sets forth the pertinent facts, appropriately frames the issues, and contains cohesive legal arguments with respect to those issues. Thus, we will address the merits of the appeal. *Twardowski*, 321 Ill. App. 3d at 511.

¶ 15    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West

2016). It is a drastic means of disposing of litigation. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. A plaintiff need not prove her case to survive summary judgment, but she must present a factual basis which would arguably entitle her to a judgment. *Id.* The plaintiff cannot rely on general denials and conclusions of law but rather must present a *bona fide* factual issue which must be resolved by the trier of fact. *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 670 (1992).

¶ 16     As noted, we review summary judgment rulings *de novo*. *Lay*, 2013 IL 114617, ¶ 15. Thus, we may affirm the trial court's judgment on any basis supported by the record, regardless of whether the trial court relied on that basis or its reasoning was correct. *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 25.

¶ 17     "To establish a premises liability negligence claim, the plaintiff must present sufficient factual evidence to establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 32. Proximate cause is an essential element of the claim, which is established where the plaintiff affirmatively and positively shows the defendant's negligence caused the injuries for which the plaintiff seeks to recover. *Id.* ¶¶ 32, 34. Liability against a defendant cannot be predicated on speculation, surmise, or conjecture. *Barclay v. Yoakum*, 2019 IL App (2d) 170962, ¶ 9. "If the plaintiff cannot identify the cause of his injury or can only guess as to the cause, a court cannot find the defendant liable for negligence." *Id.* Ordinarily, the issue of proximate cause is a question of fact, but it may be determined as a matter of law where the record demonstrates the plaintiff would never be entitled to recover. *Id.*

¶ 18     Plaintiff offers no argument with respect to whether the record contains evidence which creates a question of fact on the issue of causation. Nor did she offer any argument on this point

before the trial court. Thus, plaintiff has forfeited any argument to the contrary. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited). Forfeiture aside, we conclude plaintiff failed to adduce sufficient evidence on the issue of causation to preclude summary judgment.

¶ 19    During her deposition, defendant's attorney asked plaintiff about what caused her to fall, and the following colloquy occurred:

"*Q. What caused you to fall that day?*

*A. I don't know*, honest to gosh. You know, when I went back and looked, yes, I knew the sidewalk, the bricked area, was not level. There were missing bricks, all – you know, a lot of – that portion should have been re- -- I'll use the word reset, to level it and make it as flat as this table.

Q. But as you sit here today, you don't know what caused you to fall?

A. The contour of the brick sidewalk. Wasn't anything I did.

*Q. Did you trip on a missing brick?*

*A. Couldn't tell you. It happened so quickly.*

*Q. Okay. Did you miss – did you trip on an unlevel brick?*

*A. Couldn't tell you. The area I had a fall on was not level.*

Q. So the area you fell on was not level?

A. I have the photographs.

Q. I'll show you photographs.

A. Yeah, those are my photographs.

*Q. I want to know, though, from you right now, was it an unlevel brick that caused you to fall?*

*A. I can't finger it* because that would say – what's your term? Malice with aforethought. Oh, there's that brick, I'm going to stumble on that one. No.

I'm just walking, minding my own business, trying to get to the corner. Boom, I fall.

Q. In which direction were you looking just before you fell, backwards towards Martha?

A. I was looking at Martha. I turn around. Boom, I'm going down.

*** 

Q. Were you distracted by anything before your fall?

A. No." (Emphases added.)

Defendant's attorney later asked plaintiff whether she felt her feet slip or trip on anything when she fell, and the following colloquy occurred:

"A. I just went down.

Q. So you don't know?

A. I – no. Nothing was wet. I didn't slip.

Q. Okay.

A. I don't shuffle my feet."

¶ 20   Later during her deposition, plaintiff was read the sworn statement of Igarashi, in which Igarashi averred, in pertinent part, she walking behind plaintiff and observed plaintiff trip and fall to the ground, striking her mouth, but "did not observe any defect on the brick[-]paved sidewalk

- 9 -

where [plaintiff] tripped and fell" and had no knowledge of what caused plaintiff to trip and fall. When asked whether she disputed Igarashi's statements, plaintiff responded, "[Igarashi] says I tripped. My explanation is I know I went down, and I don't – I don't know what really caused it."

¶ 21    Although plaintiff testified her fall was caused by the contour of the brick sidewalk, her entire testimony makes it clear she formed this belief only when she went back to the location where she fell nine months later to take a photograph. She testified, "quite frankly, I had to go back to take these pictures to look to see what the heck I could have – what *could have* brought me down." (Emphasis added.) When she was asked to identify on the photograph where she fell, plaintiff told defendant's attorney he was "asking for detail I didn't pay attention to." Indeed, although she did ultimately circle the area where she fell on the photograph, her deposition is replete with statements that she is unable to pinpoint what caused her to fall.

¶ 22    Thus, we conclude plaintiff's testimony as to what caused her to fall was based on nothing other than speculation and conjecture, which is insufficient to establish causation. See *Barclay*, 2019 IL App (2d) 170962, ¶ 9. Our conclusion is further supported by plaintiff's testimony that she fell as soon as she turned around from urging Igarashi to "hurry up" and that she did not look down prior to her fall.

¶ 23    In sum, the record, viewed as a whole, establishes that plaintiff's claim that the uneven contour of the sidewalk caused her to fall is based on speculation and conjecture. As such, she is unable to establish an essential element of her cause of action—that defendant's negligence proximately caused her injuries. See *Berke*, 2016 IL App (1st) 150397, ¶ 32. Accordingly, we find the trial court properly entered summary judgment in favor of defendant.

¶ 24   Though we could stop there, the Village also demonstrated that it was entitled to summary judgment based on the absence of actual or constructive notice, which plaintiff must prove to hold a municipality liable for an unsafe condition. See 745 ILCS 10/3-102(a) (West 2016) (to be held liable for unsafe condition, municipality must have "actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition."); *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 19 ("The rule is that constructive notice is present where a defective condition exists for such a length of time that public authorities, by the exercise of reasonable care and diligence, might have known of the condition.").

¶ 25   Here, the Village's director of engineering and public works swore by affidavit that there had been no reported trip-and-fall accidents at that location where plaintiff claimed to have fallen, and the Village had never been called out to repair any brick pavers at that location. The Village, in other words, had never been put on notice of any defect on that sidewalk and never noticed any such defect on its own.

¶ 26   Plaintiff conceded that the Village did not have actual notice but argued that constructive notice was proven—proven, that is, simply by looking at a photograph of the sidewalk. Merely showing a photograph is hardly enough to demonstrate how long an allegedly unsafe condition existed. Perhaps, hypothetically, a condition could be so egregious that, just by looking at it, it is clear that it took a great deal of time to develop and persist or should have been patently obvious to the municipality.

¶ 27   But even if a condition could, on its face, hypothetically reveal such a length of time, it did not in this case. Indeed, plaintiff's companion that day swore that she "did not observe any defect

on the brick paved sidewalk" where plaintiff fell, and the responding police officer "did not observe a trip hazard in the area where plaintiff reportedly fell." Nor does our review of the record reveal anything from a mere photograph alone that would give us any hint as to the length of time the allegedly unsafe condition existed. Indeed, we would agree with the sworn statements of Igarashi and the responding police officer that, from the photographs in the record, there appears to be nothing remarkable whatsoever about the condition of those brick pavers.

¶ 28   The Village's unrebutted proof was sufficient to establish an absence of constructive notice. The burden then fell on plaintiff, at a minimum, to raise some genuine of material fact on that question that would arguably entitle her to judgment. *Bruns*, 2014 IL 116998, ¶ 12; *Zameer*, 2013 IL App (1st) 120198, ¶ 24. Plaintiff failed to do so.

¶ 29   Absent any hint as to how long the allegedly unsafe condition existed, the Village was entitled to summary judgment on the issue of constructive notice, as well.

¶ 30   For the reasons stated, we affirm the trial court's judgment.

¶ 31   Affirmed.